Miscellaneous Docket No. _____

# United States Court of Appeals
# for the Federal Circuit

**IN RE AMAZON.COM, INC.**

*Petitioner.*

On Petition for a Writ of Mandamus
to the United States District Court for the Western District of Texas
Case No. 6:21-cv-1081-ADA
Hon. Alan D. Albright

**PETITION FOR WRIT OF MANDAMUS**

J. Christopher Carraway
KLARQUIST SPARKMAN,LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
503-595-5300
chris.carraway@klarquist.com

*Counsel for Petitioner*
*Amazon.com, Inc.*

July 20, 2022

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Amazon.com, Inc. |
| **Filing Party/Entity** | Amazon.com, Inc. |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/20/2022

Signature: /s/ J. Christopher Carraway

Name: J. Christopher Carraway

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Amazon.com, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Darryl J. Adams<br>SLAYDEN GRUBERT BEARD PLLC | | |
| Barry K. Shelton<br>SHELTON COBURN LLP | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ................................................................ vii

INTRODUCTION ..................................................................................... 1

RELIEF SOUGHT .................................................................................... 2

ISSUES PRESENTED ............................................................................... 2

STATEMENT OF FACTS ........................................................................... 3

    I.     THE PARTIES ............................................................................ 3

    II.    PLAINTIFF'S LAWSUITS, THE ACCUSED PRODUCTS, AND THIRD PARTIES ...................................................... 4

    III.   THE COLORADO ACTIONS ....................................................... 6

    IV.   AMAZON'S MOTIONS TO SEVER, TRANSFER, AND STAY ....................................................................................... 6

JURISDICTIONAL STATEMENT ................................................................. 8

STANDARD OF REVIEW ........................................................................... 8

STATEMENT OF REASONS WHY THE WRIT SHOULD ISSUE ................... 9

    I.     THE DISTRICT COURT ABUSED ITS DISCRETION BY NOT TRANSFERRING THE CASE TO COLORADO ................... 9

          A.    The Claim Against CFE Should Have Been Discounted And Severed ........................................................ 10

          B.    The Public And Private Interest Factors Weigh In Favor Of Transfer ................................................................. 18

    II.    THE DISTRICT COURT ALSO ERRED BY NOT STAYING THE CASE ................................................................ 27

MANDAMUS PETITION

A. The District Court Erred By Not Applying The Customer-Suit Exception ........................................................ 28

B. The District Court Erred By Not Staying The Case Under The General Stay Factors ............................................ 33

CONCLUSION ..................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc.*,
374 F. App'x 997 (Fed. Cir. 2010) ....................................................26

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) .................................................*passim*

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ...........21

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014) ....................................................21

*CyWee Grp. Ltd. v. Huawei Device Co.*,
No. 2:17-cv-495, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) .....35

*In re DISH Network L.L.C.*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ...........23

*In re EMC Corp.*,
501 F. App'x 973 (Fed. Cir. 2013) ..............................................11, 23

*Flygrip, Inc. v. Walmart Inc.*,
No. 6:21-CV-01082, 2022 WL 2373714 (W.D. Tex. June 29,
2022) ......................................................................................*passim*

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) .....................................19, 22, 24, 25

*GeoTag, Inc. v. Georgio Armani Spa*,
No. 2:10-CV-569, 2012 WL 12829997 (E.D. Tex. Aug. 27, 2012) .................31

*In re Google Inc.*,
588 F. App'x 988 (Fed. Cir. 2014) ..............................................8, 29

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...........24

## Cases

*In re Google, LLC,*
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021)......................22, 25

*Hoffman v. Blaski,*
363 U.S. 335 (1960)......................................................................10, 11

*In re Hoffmann-La Roche Inc.,*
587 F.3d 1333 (Fed. Cir. 2009) ...............................................14, 15, 25

*In re HP Inc.,*
No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018)...........................21

*In re HTC Corp.,*
889 F.3d 1349 (Fed. Cir. 2018) ......................................................1

*In re Hulu, LLC,*
No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) .................21, 24, 27

*Jefferson v. Sewon Am., Inc.,*
891 F.3d 911 (11th Cir. 2018) ........................................................13

*In re Juniper Networks, Inc.,*
14 F.4th 1313 (Fed. Cir. 2021) ....................................................26, 27

*Katz v. Lear Siegler, Inc.,*
909 F.2d 1459 (Fed. Cir. 1990) ...................................................28, 30

*Liaw Su Teng v. Skaarup Shipping Corp.,*
743 F.2d 1140 (5th Cir. 1984) ........................................................17

*In re Microsoft Corp.,*
630 F.3d 1361 (Fed. Cir. 2011) ........................................9, 13, 14, 15

*Murata Mach. USA v. Daifuku Co.,*
830 F.3d 1357 (Fed. Cir. 2016) ......................................................33

*In re NetScout Sys., Inc.,*
No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ............................12

*In re Nintendo Co., Ltd.,*
544 F. App'x 934 (Fed. Cir. 2013) ...................................................19

**Cases**

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) ..........................................................28

*In re Princo Corp.*,
  478 F.3d 1345 (Fed. Cir. 2007) ............................................................8

*Refac Int'l, Ltd. v. IBM*,
  790 F.2d 79 (Fed. Cir. 1986), *modified on reconsideration*, 798
  F.2d 459 (Fed. Cir. 1986) ...................................................................32

*In re Samsung Elecs. Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) ....................................................*passim*

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011) ..........................................................31

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
  676 F. Supp. 2d 321 (D. Del. 2009)....................................................31

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014) ....................................................8, 20

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ....................................................8, 19

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)...............................................................1, 13, 15

*Vantage Point Tech., Inc. v. Amazon.com, Inc.*,
  No. 2:13-CV-909-JRG, 2015 WL 123593 (E.D. Tex. Jan. 6, 2015)..................29

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014) ..........................................................35

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc) ...........................................8, 9

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
  No. 2:17-CV-00456, 2018 WL 5315206 (E.D. Tex. Oct. 26, 2018)..................12

## Cases

*In re WMS Gaming Inc.*,
  564 F. App'x 579 (Fed. Cir. 2014) ....................................................................18

*In re Zimmer Holdings Inc.*,
  609 F.3d 1378 (Fed. Cir. 2010) ...............................................................14, 15

## Statutes

28 U.S.C. § 1295 ...........................................................................................8

28 U.S.C. § 1404(a) .............................................................................*passim*

28 U.S.C. § 1651 ...........................................................................................8

## Rules

Fed. R. Civ. P. 15 .......................................................................................10

Fed. R. Civ. P. 21 .......................................................................................17

Fed. R. Civ. P. 45(c)(1)(A-B) ...................................................................21

## <u>STATEMENT OF RELATED CASES</u>

No appeals in or from the same civil action or proceeding in the lower court have previously been before the Federal Circuit or any other appellate court.

# INTRODUCTION

Venue rules are intended "to allocate suits to the most appropriate or convenient federal forum," *In re HTC Corp.*, 889 F.3d 1349, 1356 (Fed. Cir. 2018), and to prevent both "the waste of time, energy and money" and "unnecessary inconvenience" to "litigants, witnesses and the public" that arise when litigation is conducted in an inconvenient forum, *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). But here, the district court has endorsed an approach that flouts those public policies: denying Petitioner's motion to transfer based solely on Plaintiff's belated addition of a peripheral local company as co-defendant ***after*** being faced with a motion to transfer.

That ruling was incorrect, including because case law holds that venue is analyzed as of the outset of the case. Plaintiff's venue manipulations after filing have no plausible purpose except to defeat transfer under § 1404(a). This Court and the Supreme Court have repeatedly rejected similar efforts to manipulate venue. Further, the district court's ruling will have far-reaching consequences if not reversed. Plaintiff's actions provide a roadmap for other plaintiffs to file suits for nationwide damages in a preferred forum while effectively foreclosing the possibility of transfer to more convenient locations. This Court should issue a writ of mandamus to correct the district court's errors and require this case to be transferred.

Alternatively, this case should be stayed. Plaintiff sued national resellers of the accused products, rather than the actual designers behind the development and manufacture of the accused products. The well-recognized customer-suit exception was designed for such a case, allowing a suit against a reseller to be stayed in favor of a declaratory judgment action brought by the true defendant—the manufacturer. The district court denied Petitioner's stay motion based in large part on Plaintiff's belated addition of the peripheral defendant to circumvent the venue statutes, with no basis in the law.

## <u>RELIEF SOUGHT</u>

Petitioner respectfully seeks a writ of mandamus directing the district court to vacate its order denying Petitioner's motion to sever the claims against Petitioner, and to transfer the claims against Petitioner to the District of Colorado, where the manufacturers of most of the accused products are located.

Alternatively, Petitioner respectfully seeks a writ of mandamus directing the district court to vacate its order denying Petitioner's motion to stay, and to stay the claims involving the accused PopSockets and Otter products pending resolution of PopSockets' and Otter Product's declaratory judgment actions in Colorado.

## <u>ISSUES PRESENTED</u>

1. Whether the district court erred by not severing the claims involving a small local retailer.

2.  Whether the claims against Petitioner should be transferred to the District of Colorado.

3.  Whether the district court erred in its analysis of the customer-suit and traditional stay factors and, as an alternative to transfer, should be directed to stay the claims involving the accused PopSockets and Otter products.

## STATEMENT OF FACTS

## I.    THE PARTIES

Petitioner Amazon.com, Inc. is a Delaware corporation with its headquarters in Seattle, Washington.

Plaintiff Flygrip, Inc. is headquartered in New York. At the time of the original complaint, Flygrip was incorporated in New York. Appx22. Flygrip re-incorporated in Texas in March 2022, two months after Petitioner moved to transfer. Appx394; Appx523.

Defendant Coghlan Family Enterprises LLC ("CFE"), not added until the first amended complaint, is incorporated in Texas and located in San Antonio, Texas. Appx394. CFE consists of Perry and Kim Coghlan who, along with their children, resell products on Amazon.com.

Defendant Benjamin Tillinghast, added just recently in a second amended complaint, allegedly resells products on Amazon.com. Appx887. Tillinghast is a rising sophomore at Purdue University who went to high school in Waco, Texas.

Because Tillinghast was only added as a defendant after the order as to which this petition seeks a writ of mandamus, he will generally not be discussed in this petition.[1]

## II.  PLAINTIFF'S LAWSUITS, THE ACCUSED PRODUCTS, AND THIRD PARTIES

On October 18, 2021, Plaintiff filed three patent infringement actions in the Western District of Texas, against three national retailers: Amazon, Walmart Inc., and Five Below, Inc. Appx22-32; Appx335-357.

- Amazon is incorporated in Delaware and headquartered in Washington.

- Walmart is incorporated in Delaware and headquartered in Arkansas.

- Five Below is incorporated and headquartered in Pennsylvania.

In each action, the retailer defendants were not sued for any products they designed or developed, but for reselling products developed and supplied by other companies (the "manufacturers"). Appx25-30; Appx339-344; Appx351-355.

- PopSockets LLC—Incorporated in Colorado and headquartered in Boulder, Colorado, supplier of the accused PopGrip products.

---

[1] Petitioner does not understand the purpose of adding Tillinghast as a co-defendant unless it was to influence this Court's decision on mandamus. Because Tillinghast was not a defendant at the time of the district court's order, his subsequent addition is, in Petitioner's view, irrelevant to this petition. But in any event, all of the arguments herein regarding peripheral defendant CFE would also apply to peripheral defendant Tillinghast, and, like CFE, Tillinghast's sales of accused products are negligible relative to Petitioner's.

- Otter Products LLC—Incorporated in Colorado and headquartered in Fort Collins, Colorado, supplier of the accused Otter+Pop products.

- Quest USA Corp.—Incorporated and headquartered in New York, supplier of the accused SpinPop products.

- Nite Ize, Inc.—Incorporated in Colorado and headquartered in Boulder, Colorado, supplier of the accused FlipOut products.

- Bytech NY, Inc.—Incorporated and headquartered in New York, supplier of the accused Sidekick products.

- Merkury Innovations LLC—Incorporated and headquartered in New York, supplier of the accused Grip'z products.

Because the manufacturers are not subject to personal jurisdiction in the Western District of Texas, Plaintiff sued the three retailer defendants. All three complaints were filed on October 18, 2021.

- Plaintiff sued Petitioner for reselling the accused PopSockets, Otter, Quest, and Nite Ize products. Appx25-30. On April 11, 2022, Plaintiff filed an amended complaint, dropping accusations against Nite Ize products and adding a local business, CFE, as co-defendant. Appx394-405.[2] CFE was sued

---

[2] Plaintiff also added a second local business, ATX Overstock, but those claims were dismissed before the Court analyzed or ruled on Petitioner's motion. Appx875.

for allegedly reselling the accused PopSockets products. On July 14, Plaintiff filed a second amended complaint, adding undergraduate student Benjamin Tillinghast as a co-defendant for allegedly reselling the accused PopSockets products. Appx886-897.

- Plaintiff sued Walmart for reselling the accused PopSockers, Otter, Quest, and Merkury products. Appx339-344.

- Plaintiff sued Five Below for reselling the accused Quest, Merkury, and Bytech products. Appx351-355.

## III.  THE COLORADO ACTIONS

On October 28, 2021, PopSockets filed suit against Plaintiff in the District of Colorado, seeking a declaratory judgment that PopSockets products do not infringe any of the patents-in-suit. Appx358-372.

On December 8, 2021, Otter Products filed a similar action in the same court. Appx373-388.

## IV.  AMAZON'S MOTIONS TO SEVER, TRANSFER, AND STAY

On January 10, 2022, Petitioner filed a motion to transfer this action to the District of Colorado, where PopSockets and Otter are located, and thus where the majority of the relevant evidence and witnesses are located. Appx166-187. Plaintiff then sought venue discovery, which had the effect of allowing the case to age by several months while the transfer motion was pending. Appx390-393. On April 11,

the date venue discovery closed, Plaintiff amended its complaint to add the small Texas-based business CFE, as co-defendant. Appx394-405.

On April 22, Petitioner moved to sever the claims against Petitioner from the claims against CFE, and to stay the claims against the local defendants pending resolution of the claims against Petitioner. Appx408-427. Petitioner also filed a revised transfer motion, adding factual support from venue discovery and addressing the newly-added defendants. Appx476-497. Petitioner also moved, in the alternative, to stay the case pending resolution of the Colorado actions filed by PopSockets and Otter.

On June 28, more than five months after Petitioner moved to transfer and the week before the *Markman* hearing, the district court issued an order denying Petitioner's motions. Appx1-16. This petition challenges that order.

The next day, the district court granted-in-part a similar motion filed by Walmart, requesting that the claims involving PopSockets and Otter be stayed pending resolution of the Colorado actions or, in the alternative, for the case to be transferred to Colorado. *Flygrip, Inc. v. Walmart Inc.*, No. 6:21-CV-01082, 2022 WL 2373714 (W.D. Tex. June 29, 2022). The district court found that the customer-suit exception applied, and stayed the claims involving PopSockets and Otter pending resolution of the Colorado actions, *id.* at *3-4, even though the district court

had done the opposite the day before with respect to Amazon's identical request for a stay, Appx12-16.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651, and because the underlying action is a patent case. 28 U.S.C. § 1295; *In re Princo Corp.*, 478 F.3d 1345, 1351 (Fed. Cir. 2007).

## STANDARD OF REVIEW

Fifth Circuit law applies to this Court's review. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Under Fifth Circuit law, a petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief he desires"; and (3) demonstrate that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (citation omitted). This Court has repeatedly recognized that, under Fifth Circuit law, mandamus is appropriate to correct transfer denials that are "clear abuses of discretion." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1339 (Fed. Cir. 2014) (collecting cases). Similarly, it is appropriate for mandamus to correct denials of a motion to stay proceedings that are clear abuses of discretion. *In re Google Inc.*, 588 F. App'x 988, 992 (Fed. Cir. 2014) ("*Google I*").

## STATEMENT OF REASONS WHY THE WRIT SHOULD ISSUE

The district court erred by allowing Plaintiff to defeat Petitioner's transfer motion by adding a small, peripheral Texas business as co-defendant. Denying transfer was error, including because case law holds that venue should be assessed as of when the suit was instituted if not doing so would reward a party's attempts at venue manipulation. This Court and the Supreme Court have long warned against artificial manipulation to circumvent the purposes of §§ 1400(b) and 1404(a), and if this Court does not intervene, others will surely imitate Plaintiff's strategies. A writ of mandamus is warranted to correct this error.

Additionally, the district court erred by not staying the staying the case. If this case is not transferred to the District of Colorado, it should be stayed pending the resolution of the Colorado actions, under the customer-suit exception.

## I.     THE DISTRICT COURT ABUSED ITS DISCRETION BY NOT TRANSFERRING THE CASE TO COLORADO

Section 1404(a) analysis proceeds in two steps. First, the court asks whether the "action 'might have been brought' in the destination venue." *In re Volkswagen*, 545 F.3d at 312 (quoting 28 U.S.C. § 1404(a)). Second, a court must assess whether transfer is warranted based on factors concerning "convenience of parties and witnesses" and "proper administration of justice." *In re Microsoft Corp.*, 630 F.3d 1361, 1363 (Fed. Cir. 2011).

### A.    The Claim Against CFE Should Have Been Discounted And Severed

The district court abused its discretion by not transferring the infringement claims against Amazon to the District of Colorado. The district court's holding was predicated on the opinion that Plaintiff's last-minute claim against CFE could not be severed and therefore the requirement that the case "could have been brought" in Colorado was not met. Under clear precedent from the Supreme Court and this Court, however, the claim against CFE should be severed.

### 1.    Venue Should Be Assessed As Of When The Suit Was Instituted

As an initial matter, the district court incorrectly ruled that Plaintiff's late addition of CFE as a co-defendant should be considered when ruling on Petitioner's motions to transfer and stay. The district court's analysis included two legal errors.

First, the district court, relying solely on Federal Rule of Civil Procedure 15, held that Plaintiff's Amended Complaint "relates back" to the Original Complaint and thus the late addition of CFE should be afforded (dispositive) weight in the transfer analysis. Appx11. But the Supreme Court has held that venue should be analyzed with respect to the original complaint when not doing so would reward a party's acts to manipulate venue.

In *Hoffman v. Blaski*, the petitioners argued that the requirement of "where [an action] might have been brought" should include both "the time of the bringing

of the action" as well as "the time of the transfer," and that a party's post-filing activities should be relevant to the analysis. 363 U.S. 335, 342 (1960). Specifically, petitioners argued that, "in the interim between the bringing of the action and the filing of a motion to transfer it, the defendants may move their residence to, or, if corporations, may begin the transaction of business in, some other district, and, if such is done, the phrase 'where it might have been brought' should be construed to empower the District Court to transfer the action, on motion of the defendants, to such other district." *Id*.

The Supreme Court ***disagreed***, holding that venue should be analyzed as to the facts as they stood at the time the complaint was filed, and that the conduct of a party post-complaint cannot expand the scope of jurisdiction to cover venues where the complaint could not have originally been brought. *Id*. at 344. The Court explained that the "where it might have been brought" language of § 1404(a) "directs the attention of the judge who is considering a transfer to the situation which existed when suit was instituted." *Id*. at 342-43 (internal quotations and citation omitted).[3]

This Court has similarly recognized that "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re*

---

[3] Although a properly filed amended complaint supersedes the original, this Court has recently emphasized that, "in ascertaining proper venue, we are not bound by a plaintiff's efforts to manipulate venue." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1373, 1377 (Fed. Cir. 2021) (discussed further below in Section (I)(a)(ii)).

*EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman*, 363 U.S. at 343). *See also In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020) ("*Apple III*"). This Court has emphasized that, "to the extent that post-motion events may ever be considered in a section 1404(a) analysis, we must guard against manipulative measures designed to defeat transfer to a more convenient venue." *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) (citing *Van Dusen*, 376 U.S. at 624 (1964) and *Samsung*, 2 F.4th at 1378). In *NetScout*, for example, this Court held that the plaintiff's filing of additional actions in the Western District of Texas, after a motion to transfer was filed, was an impermissible attempt at venue manipulation, and disregarded those actions. *Id*.

Adding a small local business as a co-defendant, months after the suit was instituted, to defeat a motion to transfer, is precisely the type of post-filing venue manipulation this Court and the Supreme Court have cautioned against and that should have been disregarded. *See, e.g., Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456, 2018 WL 5315206, at *2 n.2 (E.D. Tex. Oct. 26, 2018) ("Because venue is determined at the date of filing, the Court need not analyze the propriety of venue as to these late-added parties.") (citing *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1409 (Fed. Cir. 1996)).[4]

---

[4] That Petitioner filed a revised motion to transfer, between the filing of the amended complaint and when CFE was served, is of no moment. A revised motion was necessary to account for (i) Plaintiff's dismissal of claims against Nite Ize, (ii)

## 2. Plaintiff's Venue Manipulations Should Be Given No Weight

As a separate and independent reason mandamus is warranted, the inclusion of a small local business as a co-defendant, regardless of timing, should be excluded as an improper attempt to manipulate venue. In *Van Dusen v. Barrack*, the Supreme Court held that § 1404(a) "should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just." 376 U.S. at 624. Crediting Plaintiffs' maneuvering in this case contravenes that principle. This Court and the Supreme Court have repeatedly rejected similar efforts to manipulate venue.

For example, in *In re Microsoft*, the plaintiff opened an office in the Eastern District of Texas that staffed no employees, transferred documents there, and reincorporated under the laws of Texas sixteen days before filing suit. 630 F.3d at 1364-65. This Court issued a writ ordering transfer, explaining that the "Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *Id.* Applying this

---

Plaintiff's responses during venue discovery, and (iii) Plaintiff's last-minute addition of two co-defendants, requiring Petitioner to file a motion to sever. Besides the addition of Plaintiff's discovery responses, the revised motion to dismiss included no new exhibits or declarations, and relied on the same evidence as the original motion to transfer. *See* Appx471-473. *See also Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923 (11th Cir. 2018) ("parties cannot waive the application of the correct law or stipulate to an incorrect legal test").

principle, this Court concluded that it need not "honor" the connections that plaintiff made to its preferred forum "in anticipation of litigation and for the likely purpose of making that forum appear convenient." *Id.*

Similarly, in *In re Zimmer Holdings Inc.*, 609 F.3d 1378 (Fed. Cir. 2010), the plaintiff claimed that the Eastern District of Texas was its "principal place of business." *Id*. at 1381. But this Court concluded that "the plaintiff is attempting to game the system by artificially seeking to establish venue." *Id*. Likewise, in *In re Hoffmann-La Roche Inc.*, the plaintiff transferred 75,000 pages of documents to its chosen district, but this Court concluded that the "assertion that these documents are 'Texas' documents is a fiction which appears to have been created to manipulate the propriety of venue." 587 F.3d 1333, 1336-37 (Fed. Cir. 2009). In both cases, this Court granted writs directing transfer.

While the foregoing cases address manipulations regarding the second step, dealing with the convenience of parties and witnesses, this Court has recently held that "longstanding principles against manipulation are no less applicable to the requirement that an action 'might have been brought' in the transferee district." *Samsung*, 2 F.4th at 1378.

In *Samsung*, ten days before filing suit, Ikorongo Technology created a Texas limited liability company ("Ikorongo Texas") and assigned to it the right to sue for infringement in Texas, while retaining the right to sue for infringement in the rest of

the country. *Id*. at 1373. Ikorongo Texas then sued Samsung and LG in Texas. *Id*. The day after the initial complaints were filed, Ikorongo Texas and Ikorongo Technology filed amended complaints naming both entities as co-plaintiffs. *Id*. The district court denied defendants' motions to transfer to the Northern District of California, holding that the action could not have been brought in California because the original plaintiff, Ikorongo Texas, did not have the right to sue in the Northern District of California. *Id*. at 1374.

This Court noted that, "[o]n the face of the complaint, the Northern District of California could not be a proper venue for Ikorongo Texas's claims because no act of infringement of Ikorongo Texas's rights took place there." *Id*. at 1377. However, this Court held that, "in ascertaining proper venue, [it is] not bound by a plaintiff's efforts to manipulate venue." *Id*. This Court noted the numerous Supreme Court and Appellate cases denying parties' attempts at manipulating jurisdiction. *Id*. And, relying on *Van Dusen*, *Microsoft*, *Zimmer*, and *Hoffmann-La Roche*, this Court determined that Ikorongo's manipulation of the "might have been brought" requirement was impermissible. *Id*. at 1378.

Thus, the overwhelming theme of binding jurisprudence is that attempts to manipulate venue are impermissible. But here, there is extensive evidence of attempts at venue manipulation.

First, rather than suing the manufacturers of the accused products, plaintiff sued nationwide retailers, to avoid personal jurisdiction limitations.

Second, Plaintiff mixed accused products across the three retailer suits, so that no case would involve solely Colorado-based defendants, and later pointed to the other two lawsuits in arguing that transfer would be impractical. Appx587-589.

Third, after Petitioner's original motion to transfer, Plaintiff re-incorporated itself in Texas, even though Plaintiff has no connection to Texas. Appx394; Appx523.

Fourth, as discussed, also after Petitioner moved to transfer, Plaintiff sought to avoid transfer by filing an amended complaint, naming two small Texas businesses, who allegedly could not be sued in Colorado, as co-defendants. Appx394-405.

Fifth, even after the district court's ruling in its favor, Plaintiff filed another amended complaint, this time adding a college student as a co-defendant. Appx886-897.

Plaintiff's venue manipulation should not be condoned. Absent correction from this Court, this case lays a blueprint for a plaintiff to ensure that a patent infringement action can be filed and sustained in whatever venue it chooses: file an infringement action against a national retailer as well as a small local reseller that

only has a presence in Plaintiff's forum of choice. There should be no "Amazon exception" to this Court's venue law.

### 3. The District Court Incorrectly Held That The Claim Against CFE Should Not Be Severed

Federal Rule of Civil Procedure 21 provides that the "court may also sever any claim against a party." As the Fifth Circuit has noted, "if [] suit might have been brought against one or more defendants in the court to which transfer is sought, the claims against those defendants may be severed and transferred while the claims against the remaining defendant, for whom transfer would not be proper, are retained in the original court." *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984).

The claim against CFE should be severed because it is peripheral and redundant. The district court denied severance on the ground that "CFE sells the very same products that Amazon is accused of infringing," and "appear[s] to be a legitimate infringer." Appx8. But this supports severance and transfer. The question is not whether CFE is a legitimate seller, but whether the claim is peripheral.[5]

The district court posits several possibilities about what will happen if the claim against CFE is stayed, but ignores the likely outcome: Plaintiff will never

---

[5] The district court incorrectly stated that Petitioner was accused of direct infringement only, while CFE was accused of indirect infringement only. Appx8. Petitioner was accused of both direct and indirect infringement, Appx398, Appx 401. and the claim against CFE is subsumed within the claims against Petitioner.

move forward with the lawsuit against CFE because it is not worthwhile to pursue a claim against a small local retailer that is merely one of at least 150 third-party Amazon resellers of the accused products. Appx430-448. Indeed, at the hearing, it was revealed that CFE's sales of accused products had totaled just $4,000. Notably, Plaintiff did not sue any of the other at least 150 third-party resellers located outside of Texas: there is no evidence that Plaintiff is interested in protecting itself from small-time resellers, as opposed to manipulating venue; nor is there evidence that the district court believes CFE is important to a fair adjudication of this matter, given that the court proceeded with a *Markman* hearing without CFE shortly after denying Petitioner's transfer motion.

Finally, as stated below, the § 1404(a) factors warrant transfer. And, as this Court noted, "severance is particularly appropriate in peripheral claim cases to facilitate transfer." *In re WMS Gaming Inc.*, 564 F. App'x 579, 582 (Fed. Cir. 2014).

For these reasons, the district court abused its discretion in refusing to sever the claims against CFE.

## B. The Public And Private Interest Factors Weigh In Favor Of Transfer

The Fifth Circuit applies the public and private factors when deciding a § 1404(a) transfer question. Private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all

other practical problems that make a trial easy, expeditious and inexpensive." *TS Tech*, 551 F.3d at 1319. Public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law." *Id*.

The district court did not address whether the public and private interest factors weigh in favor of transfer. Appx10-12. Because these factors heavily weigh in favor of transfer, this Court should direct the district court to transfer the claims against Amazon to the District of Colorado.

## 1. Sources Of Proof Are More Readily Accessible In Colorado

In the typical patent case, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). Here, the documents regarding the development, manufacturing, and marketing of the accused PopSockets and Otter products will come from those products' manufacturers—both located in Colorado. *Cf. In re Nintendo Co., Ltd.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("In all likelihood, the retailers will have very little to offer in the way of evidence regarding the substantive aspects of the infringement case. They can add

little to nothing regarding how the technology underlying the accused products works. Indeed, we and other courts have all but said as much in the analogous context of the 'customer suit exception,' which endorses staying a case against a customer or retailer in light of the notion that the manufacturer is the 'true defendant.'") (citation omitted). Petitioner provided sworn declarations from Petitioner, PopSockets, and Otter confirming this fact. Appx188-202.

In contrast, Plaintiff admitted during venue discovery that there are no sources of proof in Texas. Despite re-incorporation from New York to Texas after Petitioner moved to transfer, Plaintiff never claimed to have any documents in Texas nor to have moved operations to Texas. Meanwhile, because Plaintiff is headquartered in New York, its documents are likely in New York, making them irrelevant to the analysis. *See Toyota*, 747 F.3d at 1340 ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums."). The same applies to any relevant Amazon documents in Washington or other venues besides the Western District of Texas and Colorado.

With zero sources of proof in Texas and an overwhelming number in Colorado, this factor weighs heavily in favor of transfer.

### 2.    Compulsory Process For Relevant Witnesses Is Available In Colorado

Petitioner provided sworn declarations identifying fourteen specific individuals in Colorado subject to service of process for trial there, including the

subject matter of their knowledge. Appx194-202. These witnesses are undisputedly important to issues in this case, including prior invention of the accused product, non-infringement of the accused product, and marketing of the accused product relevant to damages.

All of these Colorado witnesses are subject to compulsory process for a trial in Colorado only if this matter is transferred. Fed. R. Civ. P. 45(c)(1)(A-B). However, these witnesses cannot be compelled to provide testimony at trial should the case remain in Texas. They also have not indicated any willingness to travel to Waco for trial in this matter and thus are presumed to be unwilling. *See In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021) (where movant identifies "multiple third-party witnesses" that are "overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness"); *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018).

In contrast, Plaintiff has never identified a single witness that resides in the Western District of Texas. With zero identified Texas witnesses and at least fourteen Colorado witnesses, this factor heavily favors transfer. *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) ("*Apple II*") ("This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue."); *In re Apple Inc.*, No. 2021-181, 2021 WL

5291804, at *3 (Fed. Cir. Nov. 15, 2021) ("*Apple IV*") (finding that this factor strongly favored transfer where third-party companies responsible for designing and developing the accused products were in the transferee district).

### 3.    The Relevant Witnesses Are Located In Colorado

The convenience of witnesses is "an important factor." *Genentech*, 566 F.3d at 1343. "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("*Google II*"). This Court has indicated that time can be a more important metric than distance. *Id*.

The respective travel time for witnesses to travel to Waco and Denver favors transfer. The witnesses with knowledge of the accused PopSockets and Otter products are in Colorado, and thus the District of Colorado would require far less travel time for them. Appx194-202. As to Flygrip witnesses, a flight from New York City to Denver takes approximately five hours and twenty minutes, whereas flying from New York City to Waco takes approximately six hours, due to the required layover in or drive from Austin or Dallas. Appx206-207; Appx286-320. Thus, this factor favors transfer.

4. **There Are No Practical Problems Weighing Against Transfer**

Judicial economy favors transfer to Colorado, where cases by PopSockets and Otter have been filed to address all of their products, including those at issue here. Appx358-388. As to this factor, Plaintiff argued that keeping this case in Texas would promote judicial economy due to the co-pending lawsuits against Walmart and Five Below. Appx587-589. But this Court has said that "the judicial economy of having the same judge handle multiple suits involving the same patents should [not] dominate the transfer inquiry." *EMC*, 501 F. App'x at 976; *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021) ("any judicial economy considerations in keeping this case in Texas are insufficient to outweigh the clear benefits of transfer in light of the imbalance in the parties' respective presentations on the other private-interest and public-interest factors.").

Importantly, the claims involving the accused PopSockets and Otter products in the Walmart action are now stayed, *Walmart*, 2022 WL 2373714, at *3-4, and those products have never been at issue in the Five Below suit, Appx351-355. Thus, there is no benefit in judicial economy by having those claims against Petitioner remain in Texas. *See Samsung*, 2 F.4th at 1379-80 (finding judicial economy concern "overstated" given that other case in the district had only partial overlap of patents and different accused products).

In addition, transfer of this action to Colorado would not multiply the number of courts addressing the same patents and accused products because the District of Colorado already has two cases addressing the same patent asserted against Petitioner, and nearly all of the same products. As explained above, because the Colorado cases involve the manufacturers of accused products at issue (rather than a customer-retailer), a transfer there would be the most efficient course, allowing one court to address the accused product issues for the manufacturers and, by extension, Petitioner and all other retailers who have, or might, sell those products.

Thus, this factor weighs heavily in favor of transfer.

### 5. Court Congestion Is Generally Neutral

This Court has recently stated that "a court's general ability to set a fast-paced schedule is not particularly relevant to" the court congestion factor. *Apple III*, 979 F.3d at 1344. Instead, a court should look at the statistics for the "cases per judgeship and average time to trial of the two forums … disregarding the particular district court's ability to push an aggressive trial date." *Hulu*, 2021 WL 3278194, at \*5; *see also In re Google LLC*, No. 2021-178, 2021 WL 5292267, at \*3 (Fed. Cir. Nov. 15, 2021) ("*Google III*"). Moreover, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Genentech*, 566 F.3d at 1347.

Using this Court's recommended metrics of "cases per judgeship and average time to trial," the differences between the Western District of Texas and the District of Colorado are not significant, with the median time to trial for civil cases being 25.1 months in this District and 27.3 months in Colorado, and 215 civil cases per judge in this District compared to 247 cases per judge in Colorado. Thus, this factor is neutral. Appx207-208; Appx321-334. Even if the differences were considered to slightly weigh against transfer, this factor is generally considered "speculative" and should not outweigh other factors. *Genentech*, 566 F.3d at 1347.

### 6. Only Colorado Has A Local Interest

The local-interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather 'the significant connections between a particular venue and *the events that gave rise to a suit*.'" *Apple III*, 979 F.3d at 1345 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Local interest is strong where the accused products were developed because an infringement lawsuit "calls into question the work and reputation" of those individuals. *Hoffmann-La Roche*, 587 F.3d at 1336; *see also Samsung*, 2 F.4th at 1380 (finding local interest was where third parties "researched, designed, and developed most of" the accused applications which defendants distributed on their phones); *Google II*, 2021 WL 4427899, at *6 ("Because the accused products were designed and developed in the transferee venue and are not

related to Google's presence in Texas, we agree that the local interest factor should have been weighted strongly in favor of transfer.").

Here, the accused PopSockets and Otter products were designed and developed in Colorado by Colorado companies and residents, with two of the three manufacturers, their employees, and their development work located there. Appx188-202. (The remaining manufacturer at issue in Petitioner's case, Quest, is located in New York.) Thus, many, if not all, of the events forming the basis for the alleged infringement occurred in Colorado, and this lawsuit calls into question the work and reputation of individuals residing in Colorado, making the local interest strong.

No such local interest exists in the Western District of Texas. Plaintiff cannot rely on its recent re-incorporation in Texas—five months into this case and two months after Petitioner moved to transfer—to manufacture a local interest that did not exist before. Appx523. Indeed, this Court has held that incorporation in the state even just before filing a suit in that state cannot create a local interest there. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021); *In re Apple Inc.*, 374 F. App'x 997, 999 (Fed. Cir. 2010) ("*Apple I*").

While Petitioner has facilities in the Western District of Texas, these ties involve at most generalized connections to the forum, not the "significant connections between a particular venue and *the events that gave rise to a suit*." *Apple*

*III*, 979 F.3d at 1345 (finding Apple's offices and "state and local tax benefits" in the Western District of Texas were "general contacts with the forum that are untethered to the lawsuit"). Thus, the local interest weighs entirely in favor of transfer to Colorado.[6]

All factors either weigh in favor of transfer or are neutral, making this case similar to other recent cases where this Court has granted mandamus and directed transfer. *See Juniper*, 14 F.4th at 1322-23 ("In sum, this case is a very close cousin of our recent decisions in *Samsung* and *Hulu*, and the disposition of this case is largely dictated by the disposition of those cases. In those cases, as in this one, the center of gravity of the action was clearly in the transferee districts, not the Western District of Texas. And as in those cases, several of the most important factors bearing on the transfer decision in this case strongly favor the transferee court, and no factor favors retaining the case in the transferor court.").

## II.     THE DISTRICT COURT ALSO ERRED BY NOT STAYING THE CASE

Alternatively, the claims involving PopSockets and Otter products should be stayed pending resolution of the Colorado actions. The district court erred in its analysis of the customer-suit exception and traditional stay factors, often placing undue weight on the presence of CFE as a co-defendant as well as the claim

---

[6] As is typically the case in patent actions, the final two factors (familiarity of the forum and conflict of law issues) are neutral.

involving a third manufacturer, Quest. Denial of Petitioner's motion to stay amounted to a clear abuse of discretion, such that mandamus relief is warranted.

A trial court may stay an action to promote judicial economy. This is particularly true when a patent infringement case is brought not against the manufacturer of a product, but a customer who merely resells the product. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365-66 (Fed. Cir. 2014). The customer-suit exception provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

### A.  The District Court Erred By Not Applying The Customer-Suit Exception

The district court erred in not staying the case under the customer-suit exception. Indeed, the district court granted Walmart's motion to stay, in a materially identical circumstance, because of the customer-suit exception. *Walmart*, 2022 WL 2373714, at *3-4. The only difference between the two actions is Plaintiff's last-minute addition of a peripheral co-defendant, CFE, in the action involving Petitioner. Petitioner's motion to stay should not be frustrated by venue manipulation.

In determining whether the customer-suit exception applies, the court analyzes: "(1) whether the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) whether the

consumers in the first-filed action have agreed to be bound by any decision in the second-filed action, and; (3) whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-CV-909-JRG, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015) (citing *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)). The Court does not apply the factors in a "mechanical" or "precise" manner and instead adopts a "flexible approach" in order to assess whether judicial resources will be saved. *Google I*, 588 F. App'x at 991.

### 1. The District Court Correctly Held That Amazon Is Merely A Reseller

The district court correctly held that Amazon is merely a reseller of the accused products. Appx13.

### 2. The District Court Incorrectly Placed Dispositive Weight On The Lack Of A Declaration From CFE

The district court erred in giving dispositive weight to the fact that there was no evidence that CFE would agree to be bound by the outcome of the Colorado actions. *See Walmart*, 2022 WL 2373714, at *3 n.1 ("The Court's reasoning in this factor is distinguishable from *Flygrip, Inc. v. Amazon.com, Inc.* because there, another defendant was in the case.") The district court's analysis here was wrong for multiple reasons.

First, as explained above, CFE's presence in the lawsuit was designed solely to frustrate Amazon's motions to transfer and stay. Amazon clearly stated that it would agree to be bound by the outcome of the Colorado actions. Appx496. The purpose of the customer-suit exception should not be unfairly frustrated by the late addition of another defendant.

Second, there is no indication that CFE would not agree to be bound by the outcome of the Colorado actions. Amazon's revised motion to transfer or stay was filed before CFE was even served with the amended complaint. Appx872-874; Appx406-407. And CFE's only participation thus far has been requesting two extensions of time to file an answer. Appx882-885.

Finally, there is no requirement that the defendants in the first-filed action agree to be bound by the outcome of the second-filed action. For example, in *Katz v. Lear Siegler*, this Court held that the customer-suit exception should apply even though neither reseller agreed to be bound by the outcome of the manufacturers' suits, because the manufacturers "represented to the [other] court that resolution of the major issues before that court, including patent infringement, patent validity, and [plaintiff's] capacity to sue, will resolve these issues as to their customers." 909 F.2d at 1464. Here, PopSockets and Otter have represented that the outcomes of the Colorado actions will resolve all issues relating to resellers' sales of accused products, and thus a stay is warranted even without CFE's explicit agreement.

The district court's opinion relies on two easily distinguishable district court opinions, both of which involved situations where the defendants moving for the stay did not agree to be fully bound by the outcome of the second-filed action. Appx14. In *GeoTag, Inc. v. Georgio Armani Spa*, the defendants moving for the stay only agreed to be bound to an invalidity ruling, but not any other issues, such as infringement, claim construction, or injunctive relief. No. 2:10-CV-569, 2012 WL 12829997, at *4 (E.D. Tex. Aug. 27, 2012). And in *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, the defendant moving for the stay did not agree to be bound by any determination. 676 F. Supp. 2d 321, 328 (D. Del. 2009). Additionally, the defendant was also a party to the second-filed action, which the court noted defeated the whole purpose of the customer-suit exception. *Id*. at 327.

### 3. The District Court Incorrectly Held That A Stay Would Not Promote Judicial Economy Because Of The Quest Product

The district court erred by placing unwarranted weight on the presence of a claim involving the third manufacturer, Quest, holding that a stay involving the accused PopSockets and Otter products would not be economical as a result. Appx14-15.

The district court stated that, unless the manufacturer suit resolved *all* essential issues of the customer suits, there is *no* improvement in judicial economy and efficiency. Appx14. That is incorrect. *See Spread Spectrum Screening LLC v.*

*Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) ("[W]e clarified that the manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits.") (citing *Katz*, 909 F.2d at 1464). Determining whether the accused PopSockets and Otter products infringe the patents-in-suit would resolve major issues in this patent litigation.

Additionally, the district court incorrectly relied on the premise that the presence of the accused Quest product meant that the manufacturers were not the only source of the accused products. Appx15. There is a crucial difference between situations (i) where multiple companies are the responsible the manufacture of an accused product, and (ii) where the Plaintiff has accused multiple products in a single lawsuit, each the responsibility of a single manufacturer. Here, Petitioner is not involved in the manufacture of any products, Appx188-202, and the fact that there are multiple accused products should not frustrate the purpose of the customer-suit exception. *Cf. Refac Int'l, Ltd. v. IBM*, 790 F.2d 79, 80-81 (Fed. Cir. 1986), *modified on reconsideration*, 798 F.2d 459 (Fed. Cir. 1986) (in case involving thirty-seven total defendants, staying proceedings against thirty-one "customer" defendants while proceeding with claims against six "manufacturer" defendants).

The purpose of this factor is to prevent a situation where liability must be assessed against multiple companies involved in the manufacture of a single product.

Here, the Colorado actions will resolve all issues regarding the sale of all accused PopSockets and Otter products. As the district court correctly noted, Petitioner proved that PopSockets and Otter have exclusivity over the production of their own products. Appx14. The presence of an additional claim involving an accused Quest product will not impact that fact.

In any event, any concerns regarding the presence of multiple accused products can be solved by severing the claim against Petitioner regarding Quest. Indeed, in the Walmart action, the district court severed the claims against Walmart involving not only Quest, but a fourth manufacturer as well. *Walmart*, 2022 WL 2373714, at \*3-4. There, the district court held that the most economical solution was to sever and stay the claims involving PopSockets and Otter products, while allowing the claims involving the other manufacturers proceed. *Id*. It is unclear why the district court arrived at the opposite holding in this action.

## B.    The District Court Erred By Not Staying The Case Under The General Stay Factors

District courts typically analyze stays under a three-factor test: "(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016).

Although the action should be stayed on the basis of the customer-suit exception, the traditional stay factors also support a stay of claims involving the accused PopSockets and Otter products. The district court incorrectly analyzed all three of the traditional stay factors.

### 1. The District Court Incorrectly Held That Plaintiff Would Be Prejudiced By A Stay

The district court agreed with Plaintiff that it would be economically disadvantaged by being forced to engage in inefficient and more costly piecemeal litigation if this case was stayed. Appx15. But Plaintiff has voluntarily subjected itself to costly and piecemeal litigation by initiating three different lawsuits in Texas against retail customers rather than simply suing the true defendants in the proper venues. Plaintiff has never identified any credible prejudice that could result from the claims against PopSockets and Otter products being stayed, as Plaintiff would have a full opportunity to litigate those issues in the Colorado actions.

### 2. The District Court Incorrectly Held That A Stay Would Not Simplify The Issues

The district court incorrectly held that there would be no simplification of the issues because the Colorado actions would not resolve *all* of the issues, including those involving the accused Quest product. Appx16. The district court also relied on the two co-pending Texas cases, even though it granted Walmart's stay motion the very next day, *Walmart*, 2022 WL 2373714, at *3-4, and even though the Five Below

case does not involve PopSockets or Otter products, Appx351-355. The district court's decision to force Petitioner to litigate issues involving the accused PopSockets and Otter products in Texas, while staying identical claims against Walmart, has unnecessarily complicated the issues even further.

### 3. The District Court Incorrectly Held That The Early Stage Of The Case Was Neutral

This case is in its early stages. The district court found that this factor was neutral, even though the motion to stay was filed before the *Markman* hearing and before fact discovery began.[7] Appx16. The district court's rationale was based solely on the fact that a trial date had been set, but that was incorrect, as the court did not enter a scheduling order until after Petitioner moved to transfer, and even a month after Petitioner filed its revised motion. Appx876-881. Furthermore, the scheduled trial date is likely unrealistic in light of the newly added co-defendants.

---

[7] That the district court held *Markman* hearing shortly after issuing its order is irrelevant to the analysis. Appx21. A case is still in its "early stages" at the time of claim construction, *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-cv-495, 2018 WL 4002776, at *4 (E.D. Tex. Aug. 22, 2018), and in any event, as with motions to transfer, with motions to stay, "the time of the motion is the relevant time to measure the stage of litigation." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014); *Apple III*, 979 F.3d at 1343 (discounting any "significant steps," such as the *Markman* hearing, which occurred after the defendant moved to transfer). Absent this principle, a district court could defeat transfer by denying a transfer motion shortly before a *Markman* hearing.

## <u>CONCLUSION</u>

This Court should issue a writ of mandamus, vacate the district court's order, and direct the district court to sever the claims against Amazon and transfer them to the U.S. District Court for the District of Colorado. Alternatively, this Court should direct the district court to stay the claims involving the accused PopSockets and Otter products, pending resolution of the Colorado actions.

Respectfully submitted,

KLARQUIST SPARKMAN, LLP

*/s/ J. Christopher Carraway*
   J. Christopher Carraway
   *Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1). The body of the petition contains 7,718 words, excluding portions exempted by rule.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Times New Roman font.

Dated: July 20, 2022

*/s/ J. Christopher Carraway*
J. Christopher Carraway
*Counsel for Petitioner*

## PROOF OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Federal Circuit by using the

appellate CM/ECF system on July 20, 2022.

A copy of the foregoing was served upon the following counsel of record on

and the district court via an express carrier:

Robert D. Katz
Katz PLLC
6060 N. Central Expressway, Suite 560
Dallas, TX 75206
214-865-8000
rkatz@katzfirm.com

Karl Rupp
Sorey & Hoover LLP
100 N. 6th Street, Suite 502
Waco, Texas 76701
254-265-5658
krupp@soreylaw.com

Hon. Alan D. Albright
United States District Court for the Western District of Texas
800 Franklin Ave, Room 301
Waco, Texas 76701
254-750-1510

Dated: July 20, 2022

*/s/ J. Christopher Carraway*
J. Christopher Carraway
*Counsel for Petitioner*
