# In The
# United States Court Of Appeals
## For The Federal Circuit

**2022-157**

**IN RE AMAZON.COM, INC.,**

*Petitioner.*

On Petition for a Writ of Mandamus to the United States District Court for the
Western District of Texas in Case No. 6:21-cv-01081-ADA,
Hon. Alan D Albright
_____

**OPPOSITION TO PETITION FOR WRIT OF MANDAMUS**
_____

Karl Rupp
Sorey & Hoover, LLP
100 North 6th Street, Suite 502
Waco, Texas 76701
903-230-5600
krupp@soreylaw.com

Robert D. Katz
KATZ PLLC
6060 N. Central Expressway, Suite 560
Dallas, Texas 75206
214-865-8000
rkatz@katzfirm.com

*Counsel for Respondent Flygrip, Inc.*

Dated: July 28, 2022

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 22-157 |
| **Short Case Caption** | In re Amazon.com, Inc. |
| **Filing Party/Entity** | Flygrip, Inc. |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/28/2022

Signature: /s/ Robert D. Katz

Name: Robert D. Katz

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Flygrip, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Robert D. Katz<br>Katz PLLC | | |
| Karl Rupp<br>Sorey & Hoover LLP | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

I.       REASONS FOR DENYING THE WRIT ................................................. 1

A.      INTRODUCTION ......................................................................... 1

B.      AMAZON'S THIRD-PARTY SELLERS ARE PROPER CO-DEFENDANTS .................................................................................. 3

C.      AMAZON'S THIRD-PARTY SELLERS WERE PROPERLY PART OF THE CASE FOR THE PURPOSES OF AMAZON'S TRANSFER MOTION .... 6

D.      FIFTH CIRCUIT LAW COUNSELS AGAINST SEVERING AMAZON' S CO-DEFENDANTS ...................................................... 6

E.      THE DISTRICT COURT PROPERLY APPLIED FIFTH CIRCUIT LAW INVOLVING JOINDER ...................................................... 8

F.      THE CO-PENDING LITIGATION COUNSELED AGAINST BOTH SEVERANCE AND STAY .................................................... 8

G.      AMAZON'S PETITION RELIES ON INCORRECT AND INCOMPLETE FACTS .................................................................. 10

H.      AMAZON'S VENUE CASE LAW CITATIONS ARE MISPLACED .. 11

I.      AMAZON'S "MANIPULATION" CLAIMS ARE BASELESS ............ 14

J.      THE PUBLIC AND PRIVATE INTEREST FACTORS WEIGHED AGAINST TRANSFER ............................................................... 17

     1.    The Relative Ease of Access to Sources of Proof ................................. 18

     2.    The Availability of Compulsory Process to Secure Witness Attendance ........................................................................ 19

     3.    Cost of Attendance for Willing Witnesses Does Not Favor Transfer ...................................................................... 21

     4.    The Practical Problems Factor Does Not Favor Transfer ....................... 23

     5.    Administrative Difficulties Flowing from Court Congestion ................. 26

     6.    Local Interest in Having Localized Interests Decided at Home ............. 27

     7.    The Remaining Factors Weight Slightly Against Transfer or Are Neutral ............................................................................ 28

K.      THE DISTRICT COURT PROPERLY DENIED AMAZON'S MOTION TO STAY ......................................................................... 29

     1.     The District Court Properly Determined that the Customer Suit Exception Did Not Apply ......................................................................30

     2.     The General Stay Factors Do Not Favor a Stay ......................................32

  L.     AMAZON HAS NOT MET ITS BURDEN ...........................................33

II.     CONCLUSION .......................................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Red River Waterway Comm'n*, 231 F.3d 211 (5th Cir. 2000)...............8

*Anza Technology, Inc. v. Mushkin, Inc*., 934 F. 3d 1359 (Fed. Cir. 2019)...............7

*Defense Distributed v. Bruck*, No. 21-50327 (5th Cir. Apr. 1, 2022) ................8, 20

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co*., No. 2:15-CV-1202-WCB, 2016 WL 1659924 (E.D. Tex. Apr. 26, 2016) ......................................................5

*Hammond Dev. Int'l, Inc. v. Google LLC*, No. 1:20-cv-00342-ADA, 2020 WL 3452987 (W.D. Tex. June 24, 2020) ..................................................................22

*In re Apple, Inc.*, 743 F.3d 1377 (Fed. Cir. 2014) ..................................................11

*In re Nintendo Co., Ltd*., 544 F. App'x 934 (Fed. Cir. 2013)..................................19

*In re Samsung Elecs. Co*., 2 F.4th 1371 (Fed. Cir. 2021)........................................13

*In re Vistaprint, Ltd*., 628 F.3d 1342 (Fed. Cir. 2010) ..................................... 18, 24

*In re Volkswagen of Am., Inc*., 545 F.3d 304 (5th Cir. 2008)..................................34

*In re VTech Commcn's, Inc.*, No. 909, 2010 WL 46332 (Fed. Cir. Jan. 26, 2010).35

*Insituform Technologies, Inc. v. CAT Contracting, Inc*., 385 F.3d 1360, 72 U.S.P.Q.2d 1870 (Fed. Cir. 2004) ..........................................................................7

*Landis v. N. Am. Co*., 299 U.S. 248 (1936) ..............................................................8

*Limelight Networks, Inc. v. Akamai Techs*., Inc., 572 U.S. 915 (2014) ...................4

*Milo & Gabby LLC v. Amazon.com, Inc*., 693 F. App'x 879 (Fed. Cir. 2017).........6

*NCS Multistage v. Nine Energy Serv., Inc*., No. 6:20-cv-277-ADA, 2021 WL 1199623 (W.D. Tex. Mar. 30, 2021)...................................................................28

*ParkerVision, Inc. v. Intel Corp*., No. 6:20-cv-108-ADA, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ..........................................................................................27

*Realtime Adaptive Streaming LLC v. Amazon.com, In*c., No. 6:17-cv-00549-JRG, 2018 WL 4444097 (E.D. Tex. Sept. 5, 2018) ......................................................23

*Salazar v. AT&T Mobility LLC*, 2020 WL 6797025 (E.D. Tex. 2020) ...................27

*SAS Institute Inc. v. World Programming Limited*, No. 2:18-CV-00295-JRG, 2019 WL 8331447 (Apr. 4, 2019) ...............................................................................33

*Shifferaw v. EMSON USA*, No. 209CV54, 2010 U.S. Dist. LEXIS 25612 (E.D. Tex. Mar. 18, 2010) ...............................................................................................8

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ..........................................................14

*VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG (E.D. Tex, Jan. 31, 2014) ............................................................................................................20

*Vocalife, LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG (E.D. Tex. Nov. 27, 2019) ....................................................................................................................28

## I.    REASONS FOR DENYING THE WRIT

### A.    INTRODUCTION

Flygrip is the creation of Michael Karmatz, an individual who invented a novel gripping device for mobile phones, obtained patent protection for his invention, and began selling products practicing his invention.  After believing that its patents were being infringed, Flygrip sought to enforce its intellectual property.  Flygrip determined that it could capture most of the sales involving the products of six geographically-dispersed manufacturers by filing three lawsuits in the same district.  For a small company with very limited resources, that just makes good business sense.  The three suits were proceeding efficiently before the same court under a single set of rules, proceeded through a single consolidated *Markman* hearing, and the streamlined litigation has enabled an inventor a reasonable opportunity to protect his intellectual property.  Now however, owing to the efforts of the alleged infringers and their indemnitors, Flygrip faces an additional two district court proceedings in Colorado, and two IPR proceedings.  Amazon, by its petition, now seeks to break one of the Texas proceedings into two proceedings, which would split the claims even for sales made in the same transaction.  Amazon does so for the sake of "convenience".

Amazon repeatedly refers to the third-party sellers as "small" suggesting that it is improper to involve small entities into the litigation, while not mentioning that

the patent owner is a small inventor-owned company who simply seeks a fair opportunity to enforce its patents. Each of the retailer suits filed by Flygrip was able to accuse many accused products in a single lawsuit. Flygrip's attempts to enforce its claims as efficiently as possible do not constitute "venue manipulation" any more than Amazon's attempts to force Flygrip to litigate in multiple forums.

Filing a transfer motion has become a regular part of a defendant's playbook, regardless of the underlying merits. Amazon does not focus its argument on specific rules or factors that were incorrectly implemented by the district court. Instead, Amazon variously argues that the venue decision should be reversed because (1) Amazon alleges that Flygrip manipulated venue, or (2) venue would be more convenient elsewhere for the alleged infringers.

Amazon argues in the first paragraph of its petition that it seeks enforcement of venue rules to prevent the waste of time, energy, and money. Yet Amazon's arguments wholly ignore the inventor. Amazon seeks to move part of the litigation to Colorado, so that Flygrip would be forced to litigate its claims in multiple forums. And Amazon does not credibly establish that Colorado would be significantly more efficient for Amazon. Amazon's tactics are calculated to increase the difficulty that Flygrip already faces when seeking to enforce its patents against one of the country's largest companies.

## B.  AMAZON'S THIRD-PARTY SELLERS ARE PROPER CO-DEFENDANTS

After filing its lawsuit, Flygrip looked more closely into the relationship between Amazon and its third-party sellers.  Some of the products at issue are sold directly by Amazon, and others, while still sold on the Amazon.com website, are sold by third-party sellers.  Flygrip learned that, instead of accepting responsibility for all items sold on its platform, Amazon has repudiated responsibility, including liability for products that caused injury or death, and for patent infringement, involving products sold by its third-party vendors.  In a way, the issue about which Amazon complains here is a problem of its own making.  Because, as Flygrip learned, Amazon has argued that it does not "sell" products that involve its third-party sellers on its website, a prudent patent plaintiff should join, to the extent possible, the third-parties who are selling the products at issue.  Indeed, when Flygrip learned that Amazon had repudiated such responsibility, even for products that Amazon ships, i.e., "fulfillment by Amazon", it then took a much closer look at the third-party sellers.

Amazon also asks this Court to sever claims involving its third-party seller.  However, the complaint also accused Amazon of inducing infringement, which means that the same sales transaction would implicate both Amazon and its third-party seller.  Amazon cannot point to any court that severed claims involving the same transaction and that occurred at the same (retail) level of the supply chain.

Flygrip, as the patent owner, has every right to enforce its patents as it sees fit. Here, Flygrip sued Amazon and later determined that (1) some of the sales of the accused products on the Amazon website were being made by third-party sellers and (2) Amazon has, in the past, repudiated responsibility for infringement by its third-party sellers. Accordingly, Flygrip brought into the case the third-party sellers of which it became aware and against whom venue was proper. Of course, the third-party sellers for whom venue would be proper would generally be located in the district in which the case was filed. Amazon cannot credibly argue that the joinder was improper because Amazon is directly selling some of the identical products that are also being sold by its third-party sellers. In addition, the fact that Amazon, even after being put on notice of the patents, continued to allow third-party sellers to sell the accused products on Amazon's platform supports allegations of induced infringement along with allegations against the third-party sellers involving the same sales transactions.

Flygrip would prefer to prove indirect infringement by Amazon by including someone who directly infringed the patents at issue. *See Limelight Networks, Inc. v. Akamai Techs.*, Inc., 572 U.S. 915, 921 (2014). Thus, if Flygrip was going to pursue indirect infringement against Amazon for those sales through the third-party sellers, then Flygrip would naturally want to include the direct infringer in the same case. *See Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB,

2016 WL 1659924, at *5 (E.D. Tex. Apr. 26, 2016) (Bryson, J.) (severing the case "would require [the plaintiff] to proceed against [the selling platform] on a theory of indirect infringement without charging any party as the direct infringer," thereby "impos[ing] a substantial burden on" the plaintiff.).  As expected, the third-party sellers for which venue is proper are likely to be in the district in which the Amazon litigation is pending.  Thus, joining Amazon's third-party sellers is not "venue manipulation," it is instead reactive strategy that anticipates that Amazon will point the finger at its third-party sellers – and it is a prudent way to enforce patents involving products sold on Amazon's platform by third-party sellers.  Furthermore, a patentee should be allowed to add third-party sellers during the course of the case because it may not have sufficient information to do so at the outset of the case, or it may not initially be aware of the positions an infringer will take.

Flygrip expended much of its briefing below explaining why Amazon was likely to repudiate responsibility for its third-party sales.  Appx515-517.  Flygrip even attached the motion for summary judgment that Amazon filed in another case in which Amazon disclaimed responsibility for its third-party sales.  Appx539-571.  This Court affirmed the grant of summary judgment in that other case.  *Milo & Gabby LLC v. Amazon.com, Inc*., 693 F. App'x 879 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 335 (2017).  Tellingly, Amazon wholly failed to address the issue in both its district court arguments and in its petition to this Court.  The district court

properly recognized the possibility of "Amazon arguing for no liability as a seller lacking legal title". Appx8. Without so much as attempting to address the issue, Amazon cannot credibly rebut the fact that (1) it is a prudent practice for a patentee to join Amazon and its third-party seller and (2) severing such claims it would greatly prejudice the patentee.

### C.  AMAZON'S THIRD-PARTY SELLERS WERE PROPERLY PART OF THE CASE FOR THE PURPOSES OF AMAZON'S TRANSFER MOTION

Amazon's argument that venue is analyzed as of the outset of the case is misplaced because there is no record evidence that the third-party sales began *after* the filing of the complaint. That is, the facts involving the third-party sales of the accused products occurred *prior to* the filing of the complaint. In addition, the third-party infringing sales arose out of the same transactions alleged in the original complaint. Thus, under Rule 15(c)(1)(B), the amended complaint properly related back to the date of the original complaint. Indeed, this Court has liberally applied the relation back doctrine. *See Anza Technology, Inc. v. Mushkin, Inc*., 934 F. 3d 1359 (Fed. Cir. 2019).

### D.  FIFTH CIRCUIT LAW COUNSELS AGAINST SEVERING AMAZON' S CO-DEFENDANTS

Assessment of Amazon's petition should be made in view of Fifth Circuit law. *Insituform Technologies, Inc. v. CAT Contracting, Inc*., 385 F.3d 1360, 1372, 72 U.S.P.Q.2d 1870 (Fed. Cir. 2004) ("Because the joinder issue is not unique to patent

law, we apply the law of the regional circuit."—applying Fifth Circuit law in affirming joinder of subsequent assignee of all rights in asserted patent and right to sue for past infringement). As recently held by the Fifth Circuit:

> A court must "weigh carefully" the comparative inconvenience of splitting the suit versus the advantages to be gained from a partial transfer. It should not sever if the defendant not transferred is "so involved" in the controversy transferred to another court that partial transfer would require the same issues to be litigated in two places. "Manifestly," Plaintiffs are disadvantaged by the expense and inconvenience of having to litigate in two disparate fora and by the possibility of inconsistent results. And the public has an interest in the comparative speediness and cost-savings from utilizing a single forum for the issues arising out of one episode. *See also* 15 WRIGHT & MILLER, § 3845, at 86 (echoing these factors).

*Defense Distributed v. Bruck*, 30 F.4th 414, 428 (5th Cir. 2022) (on appeal from W.D. Tex. No. 1:18-CV-637). Thus, "the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must *adduce evidence* and arguments that *clearly establish* good cause for transfer based on convenience and justice." *Id.* at 433 (emphasis added).

The district court has broad discretion when deciding whether to sever. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). How best to manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "Courts have found that, in situations similar to the circumstances existing in this case, severance may be permitted if three factors are

met: (1) whether the remaining claims are peripheral to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims." *Shifferaw v. EMSON USA*, No. 209CV54, 2010 U.S. Dist. LEXIS 25612, at *4 (E.D. Tex. Mar. 18, 2010).

## E.     THE DISTRICT COURT PROPERLY APPLIED FIFTH CIRCUIT LAW INVOLVING JOINDER

As explained above, Fifth Circuit law judiciously considers the inconvenience of severance to a plaintiff. The district court's order properly took potential prejudice to Flygrip into consideration, along with all of the other relevant factors. Appx6-9. Amazon's petition fails to address Flygrip's inconvenience whatsoever. Everything that the district court did was correct. Joinder was appropriate and it would have been improper to sever claims that arose out of the same Amazon transactions. Furthermore, the district court properly found that, under the venue rules, the case could not have been filed in Colorado, Amazon's proposed transferee forum.

## F.     THE CO-PENDING LITIGATION COUNSELED AGAINST BOTH SEVERANCE AND STAY

Amazon's discussion of the record evidence, the procedural posture of the case, and the merits of the underlying transfer motion is incomplete and incorrect. The district court properly denied Amazon's request for a stay and did not abuse its

discretion when it found that the customer suit exception did not apply, that Colorado had no connection to one of the three products accused in the Amazon case, and that one of the products in the case was at issue in co-pending litigation in the district.

There are currently three Flygrip cases pending in the Western District of Texas. In addition to the *Amazon* case, the other cases are: *Flygrip, Inc. v. Five Below, Inc.*, No. 6:21-cv-1080-ADA and *Flygrip, Inc. v. Walmart Inc.*, No. 6:21-cv-1082-ADA. According to the initial filings of the cases, including the original complaint filed on October 18, 2021 (the "Original Complaint") in the *Amazon* action, Flygrip filed three lawsuits to enforce its patents involving products sourced from six manufacturers distributed as follows:

| | Popsockets PopGrip | Otter Popsocket Otterbox | Quest SpinPop | Nite Ize Flipout | Merkury Grip'z | Bytech SideKick |
|---|---|---|---|---|---|---|
| | Colorado | Colorado | NY | Colorado | NY | NY |
| Five Below 1080 | | | x | | x | x |
| Amazon 1081 | x | x | x | x | | |
| Walmart 1082 | x | x | x | | x | |

Flygrip amended its complaint on April 11, 2022 (the "Amended Complaint", ECF No. 22) to remove the Nite Ize Flipout product as an accused instrumentality in this case, and to add separate and additional defendants - Coghlan Family Enterprises LLC ("CFE"), an Amazon third-party seller, and ATX Overstock LLC

("ATX"), a seller of surplus and overstock merchandise from major retailers, including Amazon.com.  At that time, the current accused products are distributed as follows:

| | | Accused Products | | | | |
|---|---|---|---|---|---|---|
| | | Popsockets PopGrip | Otter Popsocket Otterbox | Quest SpinPop | Merkury Grip'z | Bytech SideKick |
| | | Colorado | Colorado | NY | NY | NY |
| -1080 case | Five Below | | | x | x | x |
| -1081 case | Amazon | x | x | x | | |
| | CFE | x | | | | |
| | ATX | x | x | | | |
| -1082 case | Walmart | x | x | x | x | |

The district court order from which Amazon appeals here was based on the Amazon transfer motion filed on April 22, 2022, after CFE and ATX were joined as co-defendants.  The district court properly found that, under 28 U.S.C. § 1400(b), venue as to CFE was not proper in Colorado.

## G.    AMAZON'S PETITION RELIES ON INCORRECT AND INCOMPLETE FACTS

This Court has not looked favorably on parties who, like Amazon, attempt to obscure such facts in an effort to bolster their transfer position. *See, e.g., In re Apple, Inc.*, 743 F.3d 1377, 1378–79 (Fed. Cir. 2014).  Amazon's statement of facts is misleading.

Amazon states that the district court issued its order on Amazon's transfer motion "more than five months after Petitioner moved to transfer". Pet. 7. In fact, Amazon withdrew its first transfer motion. The June 28, 2022 order was issued on Amazon's second transfer motion, filed on April 22, 2022 (Amazon filed a notice that briefing was complete on May 19, 2022). Amazon cannot credibly argue that the district court was slow to rule on its motion.[1]

Amazon refers to its co-defendant as a "small" business and at one point suggests sales information for the business. However, there is no record evidence establishing the size of Amazon's co-defendant or the quantum of its sales.

Amazon states that the district court "proceeded with a *Markman* hearing without CFE". Pet. 18. There is no record evidence supporting this. Flygrip's recollection was that counsel for CFE attended the *Markman* hearing, or, at a minimum, had the opportunity to do so.

## H.    AMAZON'S VENUE CASE LAW CITATIONS ARE MISPLACED

Amazon also conflates its two motions. Amazon's petition states, on page 9, that the district court should have transferred the case, but then on page 10, argues that the district court should have severed the claims involving CFE, but then

---

[1] *See* U.S. Courts Admin. Office, CJRA Report of Motions Pending Over Six Months, available at https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0930.2021.pdf (accessed June 25, 2022).

Amazon cites case law involving venue. That is, Amazon argues that *Hoffman v. Blaski* states what should be considered for a convenience transfer, but then Amazon attempts to use that to support its argument to sever claims. *Hoffman* did not involve a motion to sever.

As this Court has held, the holding of *Hoffman* is much more limited than Amazon argues. *See* Pet. 11. *Hoffman* involved conduct by a defendant to change the forums where the defendant was subject to suit. This Court has held that the holding of *Hoffman* was directed to the actions of the *defendant*:

> *Hoffman* indicated that the "where it might have been brought" language of § 1404(a) "directs the attention of the judge who is considering a transfer to the situation which existed when suit was instituted," but it did so in the context of holding a defendant could not expand jurisdiction through acts of waiver. *Id.* at 343 (internal quotation marks and citation omitted). The Court interpreted the statute to bar a defendant from creating venue in a new district "between the bringing of the action and the filing of a motion to transfer it" —for example, by moving residence or beginning to transact business. *Id.* at 342. *Hoffman* did not involve the circumstances here, and did not involve or address the filing of an amended complaint.

*In re Samsung Elecs. Co*., 2 F.4th 1371, 1376 (Fed. Cir. 2021). Indeed, in *Samsung*, this Court "look[ed] to the amended complaints to determine whether venue would have been proper" in the proposed transferee district.

Amazon also cites to *Samsung* for the proposition that venue rules should be disregarded in connection with "a plaintiff's efforts to manipulate venue". Pet. 11 n.3. However, under the facts of the present case, as explained above, Flygrip did

not undertake efforts to manipulate venue. Furthermore, in *Samsung*, this Court relied on 28 U.S.C. § 1359, which precludes actions to *invoke* the jurisdiction of a court. But here, Amazon has not, and could not, dispute that jurisdiction and venue were proper at all times. Indeed, most of the cases that Amazon cites could be distinguished on that single basis, i.e., in the present case, venue and jurisdiction were proper at all times.

Indeed, if anything, § 1359 should be applied against Amazon because Amazon is in privity with, and indemnified by PopSockets and OtterBox, the two entities who filed declaratory judgment lawsuits against Flygrip in Colorado, even though Flygrip is not subject to personal jurisdiction in Colorado. *See* Appx740 (indemnification obligation); Appx785-804 (motion to dismiss PopSockets' complaint); Appx 805-827 (motion to dismiss Otter's complaint). Thus, the collusive effect between the actions of a retailer seeking to move to the same venue to which its suppliers filed suit are readily apparent.

In addition, Amazon accuses Flygrip of venue manipulation, but does so with unclean hands. The record reveals that the Amazon-produced list of third-party sellers of accused products omitted any sellers that were located in the Western District of Texas, including those Flygrip joined to this case. Appx443-448. By withholding the identification of those sellers, Amazon could readily be viewed as engaged in venue manipulation.

Amazon also cites to *Van Dusen*, but that case does not aid Amazon. *See* Pet. 13 citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964). *Van Dusen* held that "the words 'where it might have been brought' must be construed with reference to the federal laws delimiting the districts in which such an action 'may be brought' and not with reference to laws of the transferee state concerning the capacity of fiduciaries to bring suit." In the present case, the district court did exactly that.

## I. AMAZON'S "MANIPULATION" CLAIMS ARE BASELESS

Flygrip did not "manipulate" venue. Amazon cites five actions taken by Flygrip that it alleges were undertaken to manipulate venue. Pet. 16. However, a more fulsome examination of each action discredits Amazon's accusations.

First, Amazon alleges that that Flygrip sued nationwide retailers instead of the manufacturers to avoid personal jurisdiction limitations. Flygrip is entitled to choose those against whom it enforces its patents. Flygrip could capture most of the sales involving the products of six geographically-dispersed manufacturers by filing three lawsuits in the same district. That just makes good business sense, especially for a small company with limited resources. And, each of the retailers were availing themselves of the district to sell the accused products.

Second, Amazon alleges that Flygrip mixed accused products across the three retailer suits so that no case would involve solely Colorado-based defendants. Not so. Amazon has not pointed to a single product sold by any of the defendants that

Flygrip avoided accusing in an effort to manipulate venue. Flygrip simply accused each product that each defendant was selling that Flygrip believed was infringing. Again, that just makes good business sense.

Third, Amazon alleges that Flygrip changed its state of incorporation during the course of the litigation, and during the time that Amazon's later-withdrawn transfer motion was pending. This is a red herring. While Flygrip did change its state of incorporation, it did not do so to manufacture venue. Indeed, the change of incorporation was not meaningfully discussed in the briefing or the order.

Fourth, Amazon alleges that Flygrip added two co-defendants during the course of the litigation, and during the time that Amazon's later-withdrawn transfer motion was pending. Flygrip explained that third-party sellers of the accused products were added because sellers of the products on Amazon's platform included both Amazon and third-party sellers. Under patent venue rules, the only third-party sellers that could be added were those located in the district where the litigation was pending. As such, under the patent venue rules, venue for these third-parties was not apparently proper in Colorado, or anywhere else. As for Amazon's allegation that these were "small" sellers, such information, including sales volume information, (1) was not available to Flygrip and (2) was not in the record. As for the timing of adding the third-party sellers, the case schedule was jointly submitted by the parties on January 27, 2022 and provided that Flygrip could add parties

without leave through and until August 24, 2022. *See* Appx879. Thus, by the time the parties submitted the schedule establishing the date to add parties, Amazon had already filed its later-withdrawn motion to transfer on January 10, 2022. Accordingly, the fact that a transfer motion was pending at the time of the amendment of the complaint was generally not something under Flygrip's control. Furthermore, Amazon does not explain how the transfer analysis outcome would change if Flygrip had joined the co-defendants earlier. It would not.

Fifth, Amazon alleges that Flygrip amended its complaint again, after the district court's denial of Amazon's transfer motion, to add another third-party seller of the accused products. This fact undermines Amazon's argument that the addition of third-party sellers was done to "manipulate" venue. That Amazon's venue motion had already been denied at the time of the filing of the second amended complaint provides evidence that Flygrip's addition of the seller had nothing to do with venue, but was instead a way to seek redress for those third-party sales for which, Flygrip learned, Amazon likely would abdicate responsibility. Further, the second amended complaint was filed after the district court had issued its order. Moreover, as between the parties, Flygrip is not in privity with Amazon's third-party sellers, and Flygrip was neither aware of the volume of infringing third-party sales by the seller, nor the alleged status of the last-joined seller as a college student.

In sum, Amazon's allegations of venue manipulation are based on inferences that Amazon is asking this Court to make based on very thin facts, some of which were not adduced or shown below. Setting that aside, this case is not like the cases cited by Amazon in which the patentee changed the ownership of the patents, created "ephemeral" presences with the district, or moved the location of documents or other evidence. Here, the patentee's decision to join third-party sellers was based on prudent business decisions relating to enforcement of Flygrip's patents regardless of venue. Further, this Court has recognized that the district court's ability to assess the facts as the case develops is crucial to proper evaluation of transfer motions under § 1404(a). *See, e.g., In re Vistaprint, Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) ("[A] trial judge has superior opportunity to familiarize himself or herself with the nature of the case and the probable testimony at trial, and ultimately is better able to dispose of these motions.").

## J. THE PUBLIC AND PRIVATE INTEREST FACTORS WEIGH AGAINST TRANSFER

The focus of the district court decision was on the element of 1404(a) addressing where venue would be proper. Appx10-12. Nevertheless, because Amazon's petition addressed the public and private interest factors, Flygrip likewise addresses them here.

## 1. The Relative Ease of Access to Sources of Proof

To properly consider this factor, a movant must describe with specificity the evidentiary problems it will face if the case is not transferred. As for Amazon's documents, Amazon concedes that "[a]ny relevant documents Amazon would have would be those relating to the contracts for the accused products and financial results for sales through the Amazon website. Appx488. Amazon also concedes that such documents are not located in WDTX or DCO and are therefore not relevant to the transfer analysis. Appx488-489. The fact that Amazon's documents are stored on servers that are accessible from both forums does not support a finding that DCO is more convenient than Waco.

Amazon's arguments involving the locations of documents from two of its suppliers also miss the mark. Amazon argues that "documents regarding the development, manufacturing, and marketing of the accused products will come from the three manufacturers". Appx488. However, Amazon does not explain why or how such documents would aid the ultimate fact-finder or for what purposes they might – or even could – be introduced at trial. None of the asserted claims involve method-of-manufacture or product-by-process claims. The asserted claims relate to the use of a simple mechanical device as a phone grip. As to the issue of infringement, the fact-finder will be called upon to compare the accused products to the claim language and can readily do so, without reference to documents. *See*

Appx107-146. The case cited by Amazon to support its argument that the manufacturer documents were relevant involved far more complicated technology. *See* Pet. 19 citing *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 941 (Fed. Cir. 2013). In sum, Amazon fails to identify any specific documents – or even broad categories of documents -- that will be relevant to this litigation and are located in Colorado, much less any proof of actual location, as opposed to hypothesis.

## 2. The Availability of Compulsory Process to Secure Witness Attendance

Under Rule 45(c)(1)(A), neither WDTX nor DCO may command all identified non-party witnesses to attend trial. But both courts can compel testimony by deposition. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A). Given that Amazon claims to have offices where it claims non-party witnesses reside, it can hardly argue that taking these witnesses' deposition there would impose any sort of inconvenience to it. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG (E.D. Tex, Jan. 31, 2014). Moreover, Amazon has not explained how it would be inconvenienced by presenting the non-party witnesses' deposition testimony at trial. *See id*.

Furthermore, Amazon's arguments here are unavailing for the same reasons as shown for the previous factor. First, Amazon does not explain why witness testimony from its suppliers would be necessary or even likely. *Defense Distributed*, 30 F.4th at 434 ("the movant has the burden to establish good cause, which requires

an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum").  The accused products at issue are phone grips—relatively simple mechanical devices that can be analyzed and observed without the assistance of any specialized expertise.  Amazon does not establish what testimony would likely or actually be required from any supplier of the accused products.  Exemplary photos of the accused products are shown below (Appx581):

  

Second, even if the suppliers were involved, there would be at most one in Colorado and one in New York because Otter sources its grips from PopSockets. Moreover, Amazon cannot credibly argue that it would need to exercise compulsory process over its own suppliers.  After all, the suppliers are responsible for indemnifying Amazon and have voluntarily undertaken shadow litigation in Colorado. *See* Appx740 (indemnification obligation).  Clearly, the suppliers are at least as motivated to obtain a favorable outcome as Amazon.

The district court can more likely compel testimony from unwilling witnesses involving WDTX-based CFE. Further, the Court should give no weight to Amazon's thin reasons for transfer based on the supposed need for compulsory process. Moreover, lists of potential third-party witnesses do not affect the Court's analysis for this factor. *See Hammond Dev. Int'l, Inc. v. Google LLC*, No. 1:20-cv-00342-ADA, 2020 WL 3452987 (W.D. Tex. June 24, 2020).

Finally, Amazon states that some witnesses, including employees of Quest, are located in New York. Therefore, neither WDTX nor DCO would have subpoena power over such witnesses.

Accordingly, this factor is neutral.

### 3. Cost of Attendance for Willing Witnesses Does Not Favor Transfer

The inventor of the patent-in-suit, Michael Karmatz, is expected to testify at trial. Mr. Karmatz attests that Waco is more convenient for his attendance. Karmatz Decl. It is a near certainty that Mr. Karmatz will testify at trial. CFE is a WDTX resident, and their witnesses would likely be in or near WDTX.

Moreover, considering the district court's practice of holding short, streamlined trials, convenience considerations also favor denial of transfer. A short trial will reduce the inconvenience and time away from the office for witnesses who must attend the entire trial.

Amazon argues that the flight times from New York to Denver are slightly less than the flight times from New York to Dallas. Pet. 22. However, as a practical matter, New York and Dallas are airline hubs, and flights to and from these cities are much more frequent and much less expensive than flights between New York and Denver. Trial is scheduled in this case for June 22, 2023. Appx881. Using a June 2022 trial date as a proxy, there are 16 flights per day from NYC to Denver while there are 33 flights per day from NYC to Dallas. *See* Appx708-711. Accordingly, flights from NYC to Dallas are much less expensive than NYC to Denver. *See* Appx704-707.

Finally, non-party witnesses, including those identified by Amazon, who do not reside in either district, will be required to travel in any case. Given the realities of trial, such witnesses will certainly incur travel expenses. Those expenses as related to both meals and lodging will be unarguably and substantially higher in Denver than Waco.[2] *See Realtime Adaptive Streaming LLC v. Amazon.com, Inc*., No. 6:17-cv-00549-JRG, 2018 WL 4444097, at *6 (E.D. Tex. Sept. 5, 2018) ("[T]he Court notes airfare is only one factor in the cost of attendance: lodging and meals are likely to be significantly less expensive in Tyler than in Seattle.")

---

[2] The per-diem rate for June 2022 in Denver for lodging is $199 and for meals & incidentals is $79, for a total of $278. Appx712-715. The per-diem rate for June 2022 in Waco for lodging is $107 and for meals & incidentals is $64, for a total of $171 – rendering Denver **more than 62% more expensive** than Waco in this regard. Appx716-719.

Accordingly, this factor weighs against transfer.

### 4.     The Practical Problems Factor Does Not Favor Transfer

The presence of "co-pending litigation before the trial court involving the same patent and underlying technology, provides a substantial justification" for denying transfer. *In re Vistaprint Ltd.*, 628 F.3d at 1346 (applying Fifth Circuit law). Judicial economy weighs strongly against transfer. As shown in the table below, each of the accused products in this case are also accused products in the *Walmart* case pending here. In addition, the accused Quest SpinPop product is also accused in the *Five Below* case pending in the district. Further, the '024 patent currently asserted in this case is also asserted against *Walmart* and *Five Below*.

For the same reasons as those involving judicial economy, the avoidance of inconsistent judgments also counsels against transferring this case. If this case were transferred, overlapping claims would be proceeding in two different federal courts. Transfer could readily result in inconsistent judgments regarding infringement of the PopSockets and Otter products (which would be at issue in both the Amazon and Walmart cases) and the Quest products (which would be at issue in the Amazon and Five Below cases). A summary of the asserted claims involving U.S. Patent No. 10,800,024 is shown in the table below, demonstrating that claims 2, 4, 6, and 8 are at issue in all three cases:

| | | Popsockets PopGrip | Otter Popsocket Otterbox | Quest SpinPop | Merkury Grip'z | Bytech SideKick |
|---|---|---|---|---|---|---|
| | | Colorado | Colorado | NY | NY | NY |
| -1080 case[3] | Five Below | | | 2, 4, 6, 8 | N/A | N/A |
| -1081 case[4] | Amazon | 2, 8 | 2 | 2, 4, 6, 8 | | |
| | CFE | 2, 8 | | | | |
| | ATX | 2, 8 | 2 | | | |
| -1082 case[5] | Walmart | 2 | 2 | 2, 4, 6, 8 | N/A | |

Amazon also argues that "transfer of this action to Colorado would not multiply the number of courts addressing the same patents and accused products because the District of Colorado already has two cases addressing the same patent asserted against Petitioner, and nearly all of the same products." Pet. 24. First, Flygrip is not subject to personal jurisdiction in Colorado and has moved to dismiss the Colorado DJ Cases. Appx785-827. When the Colorado DJ Cases are dismissed, as they properly should be, there will be nothing overlapping in DCO. In addition, the Colorado DJ Cases do not include the issue of invalidity – only the issue of infringement. Therefore, the presently-pending cases here address more issues.

---

[3] For the *Five Below* case, *see* Dkts. 1-3, 1-4, 1-5 in that case.

[4] *See* Appx107-116, depicting infringement of claim 2 of U.S. Patent No. 10,800,024 involving the Otter products. *See* Appx117-133, depicting infringement of claims 2 and 8 of U.S. Patent No. 10,800,024 involving the PopSockets products. *See* Appx134-146, depicting infringement of claims 2, 4, 6, and 8 of U.S. Patent No. 10,800,024 involving the Quest SpinPop products.

[5] For the *Walmart* case, *see* ECF Nos. 1-3, 1-4, 1-5 in that case

Transferring this case to Colorado accordingly also creates a risk of inconsistent findings as to invalidity.

Amazon argues that the *Walmart* case is stayed as to the PopSockets and Otter products. Pet. 23. Tellingly, Amazon neglects to mention that both of the Colorado cases are presently stayed. Appx828-838.

Furthermore, there are only two products at issue in the Colorado DJ Cases: the PopSockets and Otter products. Transferring this case would also transfer the claims of infringement involving the Quest products, which are also accused in the *Walmart* and *Five Below* cases here. This would additionally add to the already substantial risk of inconsistent outcomes.

Moreover, the WDTX cases were first-filed. Thus, the WDTX cases should take precedence. Furthermore, the customer-suit-exception doctrine does not apply at least because (1) Amazon has not agreed to be bound by the judgments in the Colorado DJ Cases; and (2) the products at issue in the Colorado DJ Cases do not include the Quest products.

> The Federal Circuit has emphasized that 'judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice.' *In re Google, Inc*., 412 F. App'x 295 (Fed. Cir. 2011) (citing *Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960)). '[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice.' *In re Volkswagen*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). To 'permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that

§ 1404(a) was designed to prevent.' *Id*. (quoting *Cont'l Grain*, 364 U.S. at 26).

*Salazar v. AT&T Mobility LLC*, 2020 WL 6797025, *2 (E.D. Tex. 2020). Accordingly, this factor weighs strongly against transfer.

### 5.      Administrative Difficulties Flowing from Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *ParkerVision, Inc. v. Intel Corp*., No. 6:20-cv-108-ADA, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). "The relevant inquiry under this factor is actually '[t]he speed with which a case can come to trial and be resolved[.]'" *Id*.

Amazon concedes that the civil median time to trial is 25.1 months in WDTX and 27.3 months in DCO, and that the civil cases per district judge is 215 cases (3882 / 18) in WDTX and 247 cases (3215 / 13) in DCO. Pet. 25. The numbers reported by Amazon weigh against transfer and also do not reflect the recent addition of Judge Gilliland, the new WDTX magistrate judge who will undoubtedly increase the speed of the district court's patent-related docket. *See* Appx720-728. Also, it is highly likely that DCO faces a greater Covid-related backlog because it suspended trials more than the WDTX district court . Furthermore, in this case, there is a scheduled trial setting of June 22, 2023, barely more than a year away. Appx881.

Another concern with transfer is the potential for significant delay to the parties in getting back on schedule for a trial date in the transferee district. Motions

to transfer can often disrupt and stall litigation, increasing costs and adding years to the time of final resolution of the dispute. It is unlikely – if not impossible – that a court in DCO will be able to receive this case (if transferred), set a scheduling conference, and provide the parties with *Markman* and jury selection dates anywhere remotely close to those already established in WDTX. Accordingly, this factor weighs strongly against transfer.

### 6.     Local Interest in Having Localized Interests Decided at Home

In its amended complaint, Flygrip specifically pleaded infringement of its patent in the pending district. Appx395-396. The fact that CFE is domiciled in the district strongly weighs against transfer. Amazon's dominant presence in the district also strongly weighs against transfer. *Vocalife, LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG (E.D. Tex. Nov. 27, 2019) ("this Court has previously rejected Amazon's argument that its presence in this District does not give rise to a local interest. Amazon does not dispute that it has facilities in this District and avails itself of the laws and protections provided by this District.")

Amazon's growth in the WDTX has been exponential after opening its doors in Austin in 2015 and employing more than 1,200 people in Domain 7 and 8 towers in Austin, leasing almost half of Domain 10 tower, a 15-story high rise. Appx636-652. After receiving $23 million dollars in tax breaks in 2014-2016, Amazon constructed three giant fulfillment centers in Texas, two in WDTX. Appx605-614.

The first warehouse is an 855,000 square-foot building in Hays County that was built in exchange for $11 million in tax incentives and employs between 1,500 and 2,000 employees, depending on the season. Appx653-661. The second warehouse is a 1.26 million square-foot building in Guadalupe County, which also happens to be the largest Amazon warehouse in the United States, and was built in exchange for $7.6 million in tax incentives, creating 350 new jobs. Appx615-625; Appx662-670. Amazon also has a "sortation center" in San Antonio (Bexar County). Appx626-635; Appx671-697. In total, there are 36 fulfillment and sortation centers in Texas compared with only 4 in Colorado. *Compare* Appx729-731 *with* Appx732-734. These warehouses and distribution centers in WDTX sell Amazon's accused products. Thus, Amazon likely sold many more of the accused products in WDTX than Colorado. Therefore, this factor strongly weighs against transfer.

### 7. The Remaining Factors Weight Slightly Against Transfer or Are Neutral

Amazon cites *Juniper* for the proposition that "the center of gravity of the action was clearly in the transferee district". Pet. 27. Amazon's comparison strains credulity in a case like this one, where Amazon is based in Washington state, the other accused retailer (Walmart) selling the accused products is based in Arkansas, the manufacturers are located in New York and Colorado, and the other pending case involving the products is in Texas. There is simply no such "center of gravity" in this case.

## K.      THE DISTRICT COURT PROPERLY DENIED AMAZON'S MOTION TO STAY

As a preliminary matter, the portion of Amazon's petition arguing for a stay raises issues that it did not present in its motion before the district court. Amazon's motion contains less than two pages involving its request for a stay. Appx495-496. Its petition contains nine such pages. Pet. 27-35. In its petition, Amazon also raises for the first time the idea of severing claims involving the accused products manufactured by Quest. Pet. 33. Amazon's motion to sever requested severance of Amazon's co-defendants. Appx413. Incredibly, Amazon argues that it would be fairer and more efficient to sever the case twice: once between Amazon and its co-defendants, and then again between groups of accused products. Amazon's argument fails.

In addition, Amazon is asking this Court for relief that it did not request from the district court. Amazon asked the district court to "stay *all claims* in this action until the PopSockets and Otter DJ actions aimed at clearing their products (including their products at issue here) are resolved." Appx495 (emphasis added). Amazon is asking this Court to stay "the claims *involving PopSockets and Otter products*". Pet. 27 (emphasis added). It is not clear why Amazon is seeking a form of relief for the first time on appeal on the basis that the district court denied a different request.

## 1. The District Court Properly Determined that the Customer Suit Exception Did Not Apply

The district court correctly analyzed the customer suit exception doctrine and found (1) that one of the three products at issue had no connection to Colorado, and (2) Amazon's co-defendant did not agree to be bound by a finding in Colorado. Appx12-15.

Amazon argues about the lack of a declaration from CFE that it agreed to be bound by the outcome of the Colorado actions. Pet. 29-31. However, it is not even clear that Amazon agreed to be bound. Appx515, n.4. First, Amazon does not point to any record evidence that Amazon agreed to be bound. Instead, Amazon merely cites to a single sentence in its reply. *See* Pet. 30 citing Appx496. That is not evidence of an agreement to be bound. Second, it is not sufficiently clear what that single sentence means. Amazon is accused of inducing infringement of some of the accused products. If one or more of the manufacturers was found to have induced infringement, would that determination apply to the inducement claims against Amazon? In addition, the Colorado declaratory judgment cases only involve claims for non-infringement. Amazon is asserting defenses of invalidity. How would those claims get resolved?

Amazon also argues that "PopSockets and Otter have represented that the outcomes of the Colorado actions will resolve all issues relating to resellers' sales of accused products, and thus a stay is warranted even without CFE's explicit

agreement." Pet. 30. Flygrip is aware of no record evidence supporting this representation.

Amazon also argues that a stay would promote judicial economy because "[d]etermining whether the accused PopSockets and Otter products infringe the patents-in-suit would resolve major issues in this patent litigation." Pet. 32. Not so. Setting aside the fact that Amazon pleaded ten affirmative defenses in its answer, it is far from clear, as explained above, how the infringement issue, which is the only issue in the stayed Colorado cases, would impact the infringement claims against Amazon, many of which are based on induced infringement.

A comparable fact pattern was considered in connection with a motion to sever and stay and the motion was denied in *SAS Institute Inc. v. World Programming Limited*, No. 2:18-CV-00295-JRG, 2019 WL 8331447 (Apr. 4, 2019). In *SAS*, the court considered whether claims against "Reseller and Customer Defendants" should be severed and stayed pending adjudication of the claims against defendant WPL. The *SAS* court denied the motion, finding (1) the customer-suit exception does not apply where the claims against the manufacturer and non-manufacturer are not identical, (2) the Reseller and Customer claims were not peripheral to the WPL claims, and (3) adjudication of the WPL claims would not dispose the Reseller and Customer claims. For similar reasons, Amazon's petition should be denied.

## 2. The General Stay Factors Do Not Favor a Stay

Amazon argues that other courts have stayed litigation against retailers when the patent owner was also pursuing claims against an "upstream defendant" such as a manufacturer. *See, e.g*., Pet. 32. But here, Flygrip is not pursuing claims against a manufacturer, and Amazon is not an "upstream defendant". As explained above, Amazon sells the accused products on its platform right alongside its third-party sellers.

Here, a stay would prejudice Flygrip, forcing it to engage in inefficient and more costly piecemeal litigation. A stay would also needlessly delay obtaining discovery from all defendants, which could cause potential loss of evidence and delay in recoveries. Further, there is substantial judicial economy to be gained by moving forward with Amazon's sales and the third-party sales on Amazon's platform at the same time. A stay (or severing the case) would also lead to the substantial risk of inconsistent judgments involving such sales of the same products.

Similarly, a stay would not simplify the issues, but would instead complicate the issues because sales of similar or identical products on Amazon's platform would need to be adjudicated in different phases. And, as explained above, adjudication of claims of infringement against Amazon would not necessarily and definitively resolve claims involving third-party sellers. Furthermore, while Amazon has referred to the doctrine of exhaustion, Amazon does not explain (1) how it would

apply where Amazon repudiates liability for third-party sales on its platform or (2) how it would apply "upstream" to the presently-stayed Colorado declaratory judgment cases initiated by two of the product suppliers.

## L.    AMAZON HAS NOT MET ITS BURDEN

Mandamus is an extraordinary remedy that is only available "when there is a clear abuse of discretion." *In re Volkswagen of Am., Inc*., 545 F.3d 304, 308 (5th Cir. 2008).  This Court "will deny a petition if the facts and circumstances are rationally capable of providing reasons for what the district court has done." *In re VTech Commcn's, Inc.*, No. 909, 2010 WL 46332, at *1 (Fed. Cir. Jan. 26, 2010) (internal citations and quotation marks omitted).  Rather, mandamus is reserved only for those egregious situations where "it is clear that the facts and circumstances are without any basis for a judgment of discretion" and are not "rationally capable of providing reasons for what the district court has done." *Id*. at *1 (emphasis added).  Amazon's allegations of venue manipulation are without merit, and Amazon has failed to meet its burden to show that the district court clearly abused its discretion.  The order was well reasoned.

## II.    CONCLUSION

For the foregoing reasons, this Court should deny Amazon's petition.

Dated: July 28, 2022

Respectfully submitted,

/s/*Robert D. Katz*
Robert D. Katz
KATZ PLLC
6060 N. Central Expressway, Suite 560
Dallas, TX 75206
(214) 865-8000
rkatz@katzfirm.com

**ATTORNEY FOR PLAINTIFF / RESPONDENT FLYGRIP, INC.**

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 21(d)(1), I certify that the foregoing is proportionately spaced and contains 7725 words excluding parts of the document exempted by rule.

/s/*Robert D. Katz*
Robert D. Katz

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that, on this the 28th day of July, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

J. Christopher Carraway
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
503-595-5300
chris.carraway@klarquist.com

*Counsel for Petitioner*


Additionally, a copy will be sent to the U.S. District Judge:

The Honorable Alan D Albright
United States District Court for the Western District of Texas
800 Franklin Ave, Room 301
Waco, Texas 76701
254-750-1510


via the U.S. Postal Service Priority Mail, by causing a true copy of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.


By: */s/ Robert D. Katz*_____
Robert D. Katz