# United States Court of Appeals for the Federal Circuit

## IN RE AMAZON.COM, INC.

*Petitioner.*

On Petition for a Writ of Mandamus
to the United States District Court for the Western District of Texas
Case No. 6:21-cv-1081-ADA
Hon. Alan D. Albright

## REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS

J. Christopher Carraway
KLARQUIST SPARKMAN,LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
503-595-5300
chris.carraway@klarquist.com

*Counsel for Petitioner*
*Amazon.com, Inc.*

August 1, 2022

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 22-157 |
| **Short Case Caption** | In re Amazon.com, Inc. |
| **Filing Party/Entity** | Amazon.com, Inc. |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/01/2022

Signature: /s/ J. Christopher Carraway

Name: J. Christopher Carraway

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Amazon.com, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Darryl J. Adams<br>SLAYDEN GRUBERT BEARD PLLC | | |
| Barry K. Shelton<br>SHELTON COBURN LLP | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................. 1

ARGUMENT .................................................... 2

I.    RESPONDENT'S ARGUMENTS AGAINST TRANSFER FAIL............. 2

    A.    The District Court Erred By Allowing Respondent To Defeat Transfer Through Venue Manipulation ............................ 2

    B.    The District Court Erred By Not Assessing Venue As Of The Institution Of The Case ...................................... 5

    C.    Severance is Proper ......................................... 6

    D.    The Private And Public Interest Factors Favor Transfer .................. 8

II.    ALTERNATIVELY, PETITIONER'S MOTION TO STAY SHOULD BE GRANTED .......................................... 14

    A.    The Relief Sought Is Proper ............................. 15

    B.    The District Court Erred By Not Applying The Customer-Suit Exception ............................................ 15

    C.    The General Stay Factors Also Support A Stay .............................. 17

CONCLUSION ................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anza Technology, Inc. v. Mushkin, Inc.*,
  934 F. 3d 1359 (Fed. Cir. 2019) ........................................................6

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ........................................................13

*In re Apple Inc.*,
  No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022)............14

*Defense Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ........................................................10, 11

*In re DISH Network L.L.C.*,
  No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ............14

*Flygrip, Inc. v. Walmart Inc.*,
  No. 6:21-cv-01082, 2022 WL 2373714 (W.D. Tex. June 29, 2022) ...........12, 15

*Freeman v. Northwest Acceptance Corp.*,
  754 F.2d 553 (5th Cir. 1985) ........................................................7

*In re Google LLC*,
  2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ...................................11

*In re Google LLC*,
  No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ...............13

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)...........................................................................7

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ........................................................14

*In re NetScout Sys., Inc.*,
  No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ............12

*In re Nintendo Co.*,
  544 F. App'x 934 (Fed. Cir. 2013) ...............................................7, 8

*Otter Products LLC v. Flygrip, Inc.*,
    No. 1:21-cv-3298, Dkt. 19 (D. Colo. Feb. 22, 2022) .........................................16

*PopSockets LLC v. Flygrip, Inc.*,
    No. 1:21-cv-2900, Dkt. 26 (D. Colo. Jan. 13, 2022) .........................................16

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ................................................................................9

*In re Samsung Elecs. Co.*,
    2 F.4th 1371 (Fed. Cir. 2021) ...........................................................................10

*SAS Inst. Inc. v. World Programming Ltd.*,
    No. 2:18-cv-00295, 2019 WL 8331447 (E.D. Tex. Apr. 4, 2019) ....................17

*Smith v. Murray*,
    477 U.S. 527 (1986)...........................................................................................15

*Sonrai Memory Ltd. v. LG Elects. Inc.*,
    No. 6:21-cv-00168, 2022 WL 545051 (W.D. Tex. Feb. 23, 2022)...................13

*In re TS Tech. Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ........................................................................10

*UltimatePointer, L.L.C. v. Nintendo Co.*,
    No. 6:11-cv-496, 2014 WL 12515338 (E.D. Tex. June 17, 2014)......................8

**Rules**

Rule 15(c)(1)(B).............................................................................................................5

Rule 21 .........................................................................................................................13

# INTRODUCTION

Respondent makes essentially three arguments for why this Court should not grant mandamus relief. All three arguments fail.

First, Respondent suggests that the addition of tiny peripheral defendants with local connections was justified because Amazon, in an unrelated case, argued that products sold by others on Amazon.com were not "sold" by Amazon, and also because Respondent alleged induced infringement. The timing of Respondent's addition of peripheral defendants casts doubt on this explanation: local defendants were added only after Amazon had moved to transfer, and on the last day of venue discovery. Also, it is well-established that the direct infringer need not be joined in an induced infringement case. If Respondent was really interested in targeting third-party retailers, it could have filed in any number of much more populated districts, where many such sellers might be found; that it did not is only explained by its desire to have its case tried in only one court, in front of only one judicial officer.

Second, Respondent argues that its co-pending litigations against other retailers justify the district court's denial. But in its only other litigation accusing PopSockets or Otter products, Respondent's claims against those products are stayed. Moreover, this Court's precedent cautions against allowing a party to force defendants into a venue by filing multiple complaints at once.

Third, Respondent argues that the public and private interest factors weigh against transfer. This is incorrect, as discussed in the Petition. It is noteworthy that the only actual Texas connection Respondent has ever proffered is its post-complaint reincorporation in Texas, and while Respondent denies doing that for purposes of venue manipulation, it offers no alternative reason for it.

There are literally millions of third-party sellers on Amazon.com. Adding a local one as an additional defendant cannot suffice to defeat an otherwise proper transfer motion, and the presence of CFE was the district court's only justification for denying transfer and stay. Amazon respectfully requests a writ of mandamus directing the district court to vacate that order, transfer to Colorado, or in the alternative, to stay.

## ARGUMENT

## I.     RESPONDENT'S ARGUMENTS AGAINST TRANSFER FAIL

### A.     The District Court Erred By Allowing Respondent To Defeat Transfer Through Venue Manipulation

Respondent argues at length that the peripheral defendants are "proper co-defendants." Opp. at 3-6. Implicit in this argument is that, by finding a local "proper co-defendant," a plaintiff can maintain venue against Amazon in any district in America, regardless of what manufacturer's products are accused. For example, by the logic of Respondent's argument and the district court's order, a New York inventor who believed that Apple infringed its patents and wished to have the

District of Wyoming resolve that dispute could do so by (i) suing Amazon there, (ii) finding a local third-party seller to be a co-defendant, and (iii) asserting sales of infringing Apple products as the theory of liability. But § 1404(a) is designed to guard against such machinations.

As an initial matter, Respondent's justification for adding defendants strains credulity. If Respondent wanted to capture all sales through Amazon.com of the accused products, it had options: Respondent could, for example, have simply sued the manufacturers of the accused products. But adding one or two tiny local third-party sellers is not a plausible strategy for capturing third-party sales; the named co-defendants represent a very small fraction of the sales, orders of magnitude less than one percent. Respectfully, this justification can only be understood as pretext.[1]

The timing of the addition of local defendants supports this. While Respondent now claims that it was unaware of third-party resellers on Amazon when it filed its first complaint, that complaint included website screenshots plainly showing sales by third-party resellers. Appx110, Appx151, Appx421. Respondent did not even add the local defendants after Amazon moved to transfer; it first took venue discovery on whether Amazon itself had relevant local connections and found

---

[1] Respondent seeks sympathy as an inventor with "very limited resources," Opp. at 1, but has dragged a twenty-year-old college student into federal litigation, admitting that it does not know how many sales, if any, he has actually made, Opp. at 16.

none. It is not a coincidence that Respondent first added local defendants the very day venue discovery closed.

As a separate justification for the district court's order, Respondent includes charts illustrating the complicated overlap of retailers and manufacturers in the three cases Respondent filed:

| | | Accused Products | | | | |
|---|---|---|---|---|---|---|
| | | Popsockets PopGrip | Otter Popsocket Otterbox | Quest SpinPop | Merkury Grip'z | Bytech SideKick |
| | | Colorado | Colorado | NY | NY | NY |
| -1080 case | Five Below | | | x | x | x |
| -1081 case | Amazon | x | x | x | | |
| | CFE | x | | | | |
| | ATX | x | x | | | |
| -1082 case | Walmart | x | x | x | x | |

Opp. at 10.

It is telling that Respondent uses its own complicated litigation approach to defend denial of transfer: this highlights that the district court's order was an endorsement of a particular strategy for venue manipulation. Respondent's chart also illustrates how little connection this case has to Texas. Tellingly, Plaintiff provides no explanation as to why it re-incorporated itself in Texas months into the litigation, and falsely represents that it did not rely on this maneuvering. *Compare* Opp. at 15, *with* Appx591 ("Amazon is infringing the patent of a Texas corporation. The

residents of Texas have a legitimate local interest in the enforcement of patents owned by a resident business.").

Finally, Respondent attempts to deflect criticism by accusing Petitioner itself of venue manipulation. Respondent baselessly accuses Petitioner of doctoring venue discovery responses, where Petitioner provided names and addresses for numerous third-party Amazon.com sellers of accused products. Opp. at 13; Appx442-448. Recognizing the tremendous difficulty of identifying third-party resellers and their addresses, Petitioner clearly and emphatically explained in its discovery responses that "[i]dentifying all current and former ASINs [Amazon Standard Identification Numbers] for the Accused Products is an extremely burdensome task," Appx439, and that it was not agreeing to locate every single ASIN, which would not be a proportional or feasible task. Petitioner conducted a reasonable search for sellers, over the past five years, of all ASINs it found for the accused products. Appx437-40. Petitioner unequivocally denies that it intentionally withheld the identification of any third-party seller.

## B. The District Court Erred By Not Assessing Venue As Of The Institution Of The Case

Respondent briefly argues that venue should not be assessed as of when the suit was instituted because "there is no record evidence that the third-party sales began *after* the filing of the complaint" and "under Rule 15(c)(1)(B), the amended complaint properly related back to the date of the original complaint." Opp. at 6.

Respondent's only authority for this point is *Anza Technology, Inc. v. Mushkin, Inc.*, 934 F. 3d 1359 (Fed. Cir. 2019), a case related to statutes of limitations that had nothing to do with transfer or stay analysis, which is inapposite here. Based on the authorities discussed in the Petition, none of which Respondent challenges, the district court erred. Pet. at 10-12.

Respondent also briefly points to Petitioner's filing of a revised transfer motion after Respondent added local co-defendants. Opp. at 11. To begin with, the accusation that the Petition hides this fact is baseless; the Petition refers repeatedly to it. *See, e.g.*, Pet. at 7, 12-13 n.4. Also, as discussed in the Petition, when a Plaintiff responds to a motion to transfer by adding local defendants or otherwise changing the case to help its position, it is entirely appropriate for a Defendant to make filings explaining why transfer is still merited; if Petitioner had not filed the revised motion, the district court likely would have denied the motion to transfer as moot based on the new defendants.

### C.   Severance is Proper

Respondent argues that "Fifth Circuit law counsels against severing Amazon's co-defendants," but only cites case law stating that courts must carefully weigh the interests at hand. Opp. at 6-8. Here, a New York inventor is alleging that products made by Colorado companies infringe his patent; none of Respondent's Fifth Circuit authorities remotely justify denial of transfer in this situation.

Indeed, the Fifth Circuit has emphasized courts "are not required to ignore the reality" of a situation. *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 557 (5th Cir. 1985). It has directed courts to "not permit themselves to be blinded or deceived by mere forms of law," to "refuse[] to elevate form over substance," to disregard "fictions," and to "deal with the substance of" the case. *Id*. Looking to substance over form is especially necessary "if the record reveals attempts at manipulation." *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010); Pet. at 10-15 (citing cases).

Respondent's argument is, in large part, that joinder was permissible, and thus severance for transfer would be improper. *See, e.g.*, Opp. at 8. This Court's precedent shows otherwise. For example, in *In re Nintendo Co.*, the plaintiff filed two Texas complaints, against Nintendo and retailers, for selling Nintendo-produced games and accessories. 544 F. App'x 934, 935 (Fed. Cir. 2013). Nintendo moved for severance and transfer, arguing "that the retailers were merely peripheral defendants and the majority of witnesses and evidence would be located at Nintendo's headquarters in Seattle, Washington." *Id*. at 936. The plaintiff then amended the complaints, adding claims against the retailers for selling unofficial third-party accessories, arguing those claims would not be resolved by the claims against Nintendo. *Id*. Nintendo then filed a new motion, moving to sever these added claims. *Id*. The district court denied Nintendo's motions on the basis that the initial joinder was allowed. *Id*. This

Court issued a writ of mandamus, holding that permissive joinder should not be used "as a springboard" to defeat transfer:

> Accordingly, when determining whether claims permissibly joined should be severed for purposes of seeking transfer and a stay of proceedings, a court should consider whether it would be convenient or fair to keep the matters together. If inconvenience or unfairness is alleged to arise from the claims proceeding together, courts must exercise their discretion to decide whether the claims should be severed under Rule 21.

*Id*. at 937-38. The district court then severed and stayed the non-Nintendo claims, and transferred the claims against Nintendo. *UltimatePointer, L.L.C. v. Nintendo Co.*, No. 6:11-cv-496, 2014 WL 12515338, at *4 (E.D. Tex. June 17, 2014).

Respondent tries to distinguish this Court's precedent by arguing that only *the defendant* is prohibited from conducting venue manipulations. Opp. at 12-13. Such a narrow and unilateral rule would contravene the principles of fairness, and in any event is contradicted by, for example, this Court's approach in *Nintendo*.

### D. The Private And Public Interest Factors Favor Transfer

The Petition demonstrated that most relevant documents and witnesses are located in Colorado, with none in Texas. Pet. at 18-27. Respondent fails to identify any connection between this action and the Western District of Texas. Instead, Respondent relies on unpublished Texas district-court cases, many of which are directly contradicted by this Court's precedent, and identifies no reason why a case

addressing whether Colorado companies' products infringe a New Yorker's patents should be tried in Waco, Texas.

## 1. No Evidence Is In Texas

Respondent does not dispute that there is no evidence in Texas. Appx502-03. Instead, Respondent's main argument is that the technology is too "simple" to require documentary evidence, making this factor irrelevant. Opp. at 18-19. Respondent has never cited a single case in support of such a proposition, and Petitioner is aware of none.

PopSockets and Otter developed, manufacture, market, and sell accused products, and their documents are unquestionably important to issues in this case. These issues include but are not limited to prior invention of accused products, infringement, and marketing of the accused products relevant to damages (e.g., numerous *Georgia-Pacific* factors and apportionment). Petitioner has identified documents relevant to the litigation in Colorado, and the existence of those documents is not, as Respondent claims, "hypothesis." *Id*. at 18.

Respondent also points to Petitioner's few relevant documents, ignoring that "the question is *relative* ease of access, not *absolute* ease of access." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). The issue is whether evidence is overall relatively easier to access from Colorado or the Western District of Texas—an issue not affected by evidence in Seattle or New York. This factor favors transfer where,

as here, "the vast majority of physical and documentary evidence relevant to this case will be found in [Colorado], and none of the evidence is located in Texas." *In re TS Tech. Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).

### 2. No Witnesses Are In Texas

Respondent does not dispute that over a dozen witnesses—PopSockets and Otter employees—are subject to compulsory process in Colorado. Pet. at 20-22. Neither party has identified a single potential Texas witness. Appx502.

Respondent attempts to minimize this factor by arguing that witnesses could be deposed in Colorado regardless of whether they are subject to compulsory process in Texas. Opp. at 19. Respondent also baselessly speculates that most of the individuals listed in Petitioner's declarations will not be called as witnesses. *Id*. at 19-20. But "[e]ven if not all witnesses testify, with nothing on the other side of the ledger, the factor strongly favors transfer." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). Petitioner expects to call PopSockets and Otter employees at trial if possible to discuss how the accused products were designed and function and the basis for market demand.

Respondent relies on *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), but that case actually shows why this factor favors transfer. The Fifth Circuit held that the district court "abused both logic and [its] discretion" to find this factor was neutral where one side "identified proof, documents, and witnesses" located in

one of the forums, while the other side made only "conclusory assertions." *Id*. at 434. Here, Petitioner has clearly and specifically identified documents and witnesses located in Colorado, while Respondent has made *zero* assertions regarding the presence of documents or witnesses in the Western District of Texas.

### 3. Cost Of Attendance Is Higher In Texas

Respondent identifies a single witness who claims Waco would be more convenient—its CEO, Michael Karmatz. Opp. at 21. But Mr. Karmatz lives in New York and Florida, which are far from both districts, and gives no reason why Waco is more convenient for him. Appx597-98. In contrast, Petitioner's Seattle-based employees have explained how Denver would be more convenient than Waco, in part because Denver has Amazon offices where they could work during trial. Appx188-193.

Respondent's travel arguments are also misplaced. Plaintiff ignores that Denver is also a major airline hub, Appx848, and that witnesses flying to Dallas still need to get to Waco, which requires either another flight or a lengthy drive. *In re Google LLC*, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("There is no major airport in the Waco Division of the Western District of Texas, and the Waco courthouse is more than 100 miles from the nearest airport with direct flights to the northeast U.S.").

Respondent's focus on food and lodging in Waco is also meritless. Even looking only at monetary costs, any savings is more than offset by the large number of witnesses who will not need to pay for travel or lodging if the case is tried in Denver. Respondent argues against this Court's precedent that every PopSockets and Otter witness should be treated as a willing witness, Opp. at 20, yet excludes these Colorado-based witnesses entirely from its convenience analysis. *See* Appx194-202. Every single identified witness would need to travel hundreds or thousands of miles to get to Waco.

### 4.    Transfer Presents No Practical Problems

Respondent relies on co-pending lawsuits, Opp. at 23-26, but this Court has "rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor." *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021); Pet. at 23 (citing cases). To find otherwise would be to endorse the strategy of suing multiple retailers in one venue to block transfer.

Moreover, the PopSockets and Otter claims in *Walmart* are now stayed pending the outcome of the Colorado actions.[2] *Flygrip, Inc. v. Walmart Inc.*, No. 6:21-cv-01082, 2022 WL 2373714, at *3-4 (W.D. Tex. June 29, 2022). No

---

[2] Respondent wrongly compares this indefinite stay with the temporary stay of the Colorado actions pending resolution of Respondent's Motions to Dismiss, Opp. at 25, which has no bearing on transfer analysis.

PopSockets or Otter products were ever accused in the Five Below suit. Appx351-355. It is in the interest of judicial economy for the Colorado court to adjudicate all issues involving the accused PopSockets and Otter products.[3]

### 5. There Is No Difference In Docket Congestion

Respondent proffers that "[t]he relevant inquiry under this factor is actually 'the speed with which a case can come to trial,'" Opp. at 26 (citing *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021)), but that unpublished district-court statement contradicts this Court's clear instruction that "a court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020) ("*Apple III*"). This Court has "repeatedly held that it is improper to assess the court congestion factor based on the fact that the Western District of Texas has employed an aggressive scheduling order for setting a trial date." *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *6 (Fed. Cir. Oct. 6, 2021).

Respondent argues transfer may cause delay, Opp. at 26-27, but that is the "garden-variety delay associated with transfer" that this Court has instructed "is not

---

[3] Petitioner believes all claims against Amazon should be transferred to Colorado. Alternatively, it would be proper to sever the Quest claim and have it remain in the Western District of Texas. Federal Rule of Civil Procedure 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever a claim against a party." *Sonrai Memory Ltd. v. LG Elects. Inc.*, No. 6:21-cv-00168, 2022 WL 545051, at *5 (W.D. Tex. Feb. 23, 2022).

to be taken into consideration when ruling on a § 1404(a) motion to transfer." *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021) (quoting *Radmax*, 720 F.3d at 289).

### 6. Texas Has No Local Interest

Respondent proffers a test that contradicts this Court's case law, focusing on "Amazon's dominant presence in this district." Opp. at 27-28. Generalized connections to the forum are not "significant connections between a particular venue and *the events that gave rise to a suit*." Pet. at 26-27 (quoting *Apple III*, 979 F.3d at 1345 (holding that Apple's $1 billion campus and "state and local tax benefits" in the Western District of Texas were "general contacts with the forum that are untethered to the lawsuit")); *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022). Likewise, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.,* 587 F.3d 1333, 1338 (Fed. Cir. 2009).

Finally, Plaintiff argues that there is no "center of gravity," in this action, Opp. at 28, but the vast majority of products at issue here are developed and designed in Colorado by Colorado companies, making Colorado's interest strong. Pet. at 25-27.

## II.     ALTERNATIVELY, PETITIONER'S MOTION TO STAY SHOULD BE GRANTED

Even Respondent seems to admit that PopSockets and Otter are the true defendants, not Petitioner. *See, e.g.*, Opp. at 20 ("Clearly, the suppliers are at least

as motivated to obtain a favorable outcome as Amazon."). The district court erred in finding that the customer-suit exception did not apply.

## A.     <u>The Relief Sought Is Proper</u>

Respondent first argues that Petitioner's request in the alternative is improper because it allegedly differs from what was sought in the district court proceeding. Opp. at 29. That is incorrect. Petitioner below sought a stay of claims involving the accused PopSockets and Otter products, and is seeking that same relief here. Petitioner also sought a stay of claims involving the accused Quest products below; however, this Petition focuses more on a stay as to PopSockets and Otter products,[4] partly because of the district court's stay of claims related to PopSockets and Otter products in the parallel *Walmart* litigation. 2022 WL 2373714, at \*3-4. But the Petition also encompasses the option of a stay of the entire case. *See, e.g.*, Pet. at 2 ("Alternatively, this case should be stayed.").[5]

## B.     <u>The District Court Erred By Not Applying The Customer-Suit Exception</u>

Respondent does not respond to Petitioner's argument that the district court

---

[4] There is no reason that the district court cannot or should not also stay the claims against the co-defendants, which only concern PopSockets products. This would make severance of the co-defendants at this stage unnecessary.

[5] Even if Petitioner were seeking narrower relief, that would not be improper. *Smith v. Murray*, 477 U.S. 527, 536 (1986) (narrowing issues "is the hallmark of effective appellate advocacy").

erred in placing dispositive weight on CFE's not explicitly agreeing to be bound by the Colorado declaratory judgment actions. Appx14; Pet. at 29-31. Instead, Respondent attacks Petitioner's own agreement to be bound.

Respondent suggests Petitioner's agreement below was insufficient in some unspecified way. Opp. at 30 ("That is not evidence of an agreement to be bound."). But Petitioner's statement was clear and unequivocal: "Amazon agrees to be bound by the outcomes of the Colorado DJ actions." Appx496. Nothing more is needed, although there is also extensive evidence in the record of the Colorado litigations supporting this point. *PopSockets LLC v. Flygrip, Inc.*, No. 1:21-cv-2900, Dkt. 26 at 11 (D. Colo. Jan. 13, 2022); *Otter Products LLC v. Flygrip, Inc.*, No. 1:21-cv-3298, Dkt. 19 at 14 (D. Colo. Feb. 22, 2022). Petitioner already explained how resolution of the Colorado actions will resolve most issues involving Petitioner, including invalidity. Appx495-96, Appx854, Appx839-40. Whether the manufacturers' accused products infringe is a predicate question to any potential Amazon liability; that is why the customer-suit exception exists.

Respondent does not address this Court's holding that there is no requirement that the customer-retailer defendants to even agree to be bound by the outcome of the later-filed action. Pet. at 30 (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)). Nor does Respondent defend the district court's reliance on two easily distinguishable district court decisions. *Id*. at 31. Instead, Respondent

relies solely on *SAS Inst. Inc. v. World Programming Ltd.*, No. 2:18-cv-00295, 2019 WL 8331447 (E.D. Tex. Apr. 4, 2019). But there, (i) the alleged customer defendants were not mere resellers, but integrated the accused software into their own products, (ii) the development of the accused software occurred overseas, meaning sales to U.S. customers were "crucial to prove actionable patent infringement," and (iii) the manufacturer was likely judgment-proof. *Id*. at *2-4. None of that is true here.

## C. The General Stay Factors Also Support A Stay

Respondent's Opposition does not address Petitioner's arguments regarding the general stay factors, and instead argues that the claims against *the co-defendants* should not be stayed, repeating nearly verbatim Respondent's opposition to a separate motion in the district-court litigation. *Compare* Opp. at 32-33, *with* Appx517-18. For the reasons set forth in the Petition, the general factors also support a stay. Pet. at 33-35.

## CONCLUSION

A writ of mandamus is warranted.

Respectfully submitted,

KLARQUIST SPARKMAN, LLP

*/s/ J. Christopher Carraway*
J. Christopher Carraway
*Counsel for Petitioner*

**CERTIFICATE OF COMPLIANCE**

This reply brief complies with the type-volume limitation of Federal Circuit Rule 21(b). The body of the brief contains 3,866 words, excluding portions exempted by rule.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Times New Roman font.

Dated: August 1, 2022

*/s/ J. Christopher Carraway*
J. Christopher Carraway
*Counsel for Petitioner*

**PROOF OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on August 1, 2022.

I certify that all counsel of record in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

A copy of the foregoing was served upon the district court via an express carrier:

Hon. Alan D. Albright
United States District Court for the Western District of Texas
800 Franklin Ave, Room 301
Waco, Texas 76701
254-750-1510

Dated: August 1, 2022

*/s/ J. Christopher Carraway*
J. Christopher Carraway
*Counsel for Petitioner*